336 So.2d 416 (1976)
Jerry Bufkin WEBB, Appellant,
v.
STATE of Florida, Appellee.
No. 75-1355.
District Court of Appeal of Florida, Second District.
July 30, 1976.
Rehearing Denied September 9, 1976.
*417 Walter R. Talley, Bradenton, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Appellant was convicted of sale of marijuana. We hold the court erred in excluding the evidence he proffered to show bias of the chief prosecution witness and further, in denying appellant's motion for a *418 new trial on the ground of newly discovered evidence. We reverse.
Appellant Webb was charged with sale of marijuana to Officer Carnahan of the Anna Maria Police Department. Carnahan testified the sale occurred in the parking lot of the Anchorage Bar in Anna Maria, at approximately 9:45 P.M., on May 28, 1975. The transaction took no more than two or three minutes, and Webb returned to the bar. Carnahan also met a Mr. Neville outside, talked with him for fifteen or twenty minutes, and returned to the bar with Neville before finally departing.
Appellant denied making the sale. While he acknowledged he had been talking with Carnahan inside the bar, he testified that he left the premises by himself shortly after 9:00 and did not return. The testimony of three other witnesses on behalf of appellant, while varying as to exact times, tended to establish that Webb and Carnahan had both been in the bar throughout the early evening, that Webb left the bar about 45 minutes before Carnahan, and that when Carnahan left, he went with Mr. Neville, not appellant. This testimony came from the bartender and Mr. and Mrs. Klingensmith, two patrons at the bar. The bartender said that appellant left the bar at 9:45 and Carnahan left with Neville at 10:30. Mrs. Klingensmith said she didn't see appellant after 9:00 and Carnahan left with Neville between 9:30 and 10:00. Mr. Klingensmith said he did not see appellant leave, but Carnahan left with Neville between 9:30 and 9:45. However, all these witnesses admitted they did not watch appellant and Carnahan constantly, and two of them conceded that Webb and Carnahan could have exited the bar momentarily without their knowledge and completed the sale.
Appellant had brought suit against the City of Anna Maria and its Police Chief for false arrest on April 14, 1975, but he was not permitted to testify about this suit. Moreover, the court refused to permit Robert Franklin, formerly Chief Detective of the Anna Maria Police Department, to testify concerning a conversation that Franklin claimed to have had with the Police Chief approximately two weeks before Webb's arrest. Franklin testified on proffer that he talked to the Police Chief and mentioned Webb's civil suit and the possibility of arresting Webb on a DWI charge to discourage him from prosecuting that suit. The Chief replied that Franklin should not worry about it because Mr. Webb was "being taken care of."
We hold that this evidence was improperly excluded. Bias or prejudice of a witness has an important bearing on his credibility, and evidence tending to show such bias is relevant. We make no comment on the merits of appellant's defense, that he was "framed" by the police department because of his civil suit, but we hold he was entitled to have that evidence presented to the jury. Here, both appellant's and Franklin's testimony would have shed light on any bias or interest the Police Chief and his subordinates may have had in the outcome of appellant's criminal trial. It has frequently been held that the existence of a civil suit by a witness against a criminal defendant is relevant to show such potential bias in the criminal trial. See Bessman v. State, Fla.App.3d 1972, 259 So.2d 776; Annot., 21 A.L.R.2d 1078. We think the situation is not essentially different where, as here, it is the defendant who brought a civil suit prior to being charged with the crime. And, the fact that Carnahan himself was not a party to the civil suit makes no material difference. The city which employed Carnahan and the city's Police Chief were parties and it is sufficient that they may have had a bias against him. See 81 Am.Jur.2d, Witnesses, § 552. The Police Chief's alleged statement to Franklin, although hearsay, would fall under the "state of mind" exception insofar as it bears on the question of his bias, motive, and intent. Cf., Allen Morris Co. v. McNally, Fla.App.3d 1974, 305 So.2d 79.
We are well aware of Fla. Stat. § 924.33, the harmless error statute, but we cannot agree that the errors here were harmless. There was no corroboration of the inculpatory portions of Carnahan's testimony, and it was essential that the jury hear any *419 admissible evidence bearing on his credibility. Cf., Roti v. State, Fla.App.2d 1976, 334 So.2d 146. Opinion Filed June 23, 1976; Lee v. State, Fla.App.4th 1975, 318 So.2d 431.
A second ground for reversal is based on the trial court's refusal to allow appellant to reopen his case to present further testimony, or to grant a new trial based on newly discovered evidence. After the first day of trial, appellant first learned of two new witnesses. The next day, before closing argument, appellant sought leave to reopen his case to present their testimony but this was denied. His later motion for new trial was also denied.
The new witnesses were undercover agents who had been in the bar on assignment with Carnahan until 9:45, and then went to the parking lot without Carnahan and remained there until 10:00. These two agents could testify with certainty that no sale to Carnahan took place in the parking lot during any of that time. True, their testimony, standing by itself, may not have been totally irreconcilable with Carnahan's, because Carnahan testified that his estimate of the time when the sale took place was not exact. The trial court's ruling was based in part on this fact. Yet, their testimony would have added greatly to appellant's case, especially when viewed in combination with that of the other witnesses. When the prosecutor cross-examined the other witnesses, he had undermined the effect of their testimony by implying the sale took place earlier in the evening, when Carnahan and Webb were both in the bar and could have slipped out for the transaction. These new witnesses could have completely ruled out the possibility of any sale having occurred before 10:00. In addition, the testimony of these new witnesses, in light of their employment by the police department, could have been given considerable weight by the jury. In summary, we think it probable the new testimony could have affected the outcome of the trial.
Furthermore, the names of these witnesses, who obviously were known or should have been known to the state, were not furnished to appellant despite his demand for discovery under RCrP 3.220. However, while these witnesses were not known to appellant until after the trial began, they were known to Mrs. Klingensmith who was in turn known to appellant prior to trial. The state suggests that appellant did not use "reasonable diligence" under RCrP 3.600(a)(3) and no new trial should be awarded. We cannot agree. What made these witnesses so essential to appellant's case was that they were specifically assigned to work with Carnahan and had therefore paid close attention to him throughout the evening. Although counsel could, as the state suggests, have asked Mrs. Klingensmith whether she knew of anyone else who could testify on appellant's behalf, from counsel's point of view this question would have led only to cumulative testimony. Under the circumstances of this case, in light of the state's prior failure to comply with the discovery rules, we find no failure to exercise reasonable diligence.
Accordingly, the judgment and sentence are reversed and the cause is remanded for a new trial.
HOBSON, Acting C.J., and BOARDMAN and SCHEB, JJ., concur.