WEBSTER, Judge.
Appellant seeks review of his convictions for possession of cocaine with intent to sell and possession of marijuana with intent to sell. He argues that the trial court committed two errors regarding exclusion of testimony, either of which entitles him to a new trial. In particular, he asserts that the trial court erroneously prohibited testimony by him and other witnesses regarding prior threats allegedly made against him by one or more of the officers involved in his arrest; and that the trial court also erroneously prohibited testimony by him and his brother regarding statements allegedly made by one or more of the officers involved in his arrest, at the time of his arrest. We conclude that the trial court did commit reversible error when it prohibited appellant and appellant’s brother from testifying about statements allegedly made at the time of appellant’s arrest by one or more of the officers involved in the arrest; and when it prohibited appellant from testifying about prior threats allegedly made against him by one or more of the officers involved in his arrest. Therefore, we are constrained to reverse.
At trial, Detective Johnston of the Leon County Sheriff’s Office testified that on August 4, 1990, he was a narcotics detective. At approximately 6:20 p.m. on that day, he and Detective Walker were driving in an area of known drug activity. As they approached a vacant lot, they saw appellant, who was sitting in a chair. There were also four or five other males in the area. When the other males saw Detective Johnston approaching, they began to scatter. Appellant stood and began to walk away from Detective Johnston’s car. According to Detective Johnston, as appellant was walking away, appellant tossed a plastic bag off to his side. Detective Johnston immediately instructed Detective Walker to detain appellant.
Detective Johnston testified that, as he and Detective Walker were approaching from one direction, Detectives Smith and Fussell were approaching from the direction in which appellant was walking. Detective Walker detained appellant, while Detective Smith retrieved the plastic bag. Detective Johnston performed a field test on the contents of the bag, based upon which he concluded that the bag contained approximately ten pieces of crack cocaine, and two smaller bags of marijuana. At that point, Detective Johnston arrested appellant.
Detective Smith testified that he and Detective Fussell were working with Detectives Johnston and Walker on August 4, 1990. Detectives Johnston and Walker approached the lot from one direction, and he and Detective Fussell approached from the opposite direction. When the people saw Detective Johnston’s car, they began to walk away, in different directions. Appellant walked toward Detectives Smith and Fussell. Detective Smith saw appellant throw away a plastic bag. He got out of his car, retrieved the plastic bag and turned it over to Detective Johnston. De *901 tective Smith said that he did not recall talking to appellant on that day.
Detective Walker testified that, when he and Detective Johnston arrived, the several males who were in the lot started to walk off in different directions. He said that he did not see appellant, or anyone else, throw or drop anything. However, he also said that he had not been watching appellant in particular. The testimony of Detective Fussell was to the same effect.
Appellant proposed to present the testimony of Warren Barnes, appellant’s brother, who had been present when appellant was arrested. The state objected that the testimony would relate, at least in part, to comments allegedly made by Detective Smith; that such testimony would be hearsay; and that, therefore, it would be inadmissible. The trial court directed that the testimony be proffered.
During the proffer, Barnes testified that he was present at the vacant lot on August 4, 1990, when the detectives arrived. According to him, appellant had just arrived, and was walking toward him and the other males who were present, when the detectives arrived. He said that he was watching appellant at all times, and that he did not see appellant drop or throw anything. As he and appellant were walking away, Detective Smith and another detective asked them to stop. Detective Smith asked them to empty their pockets. Then Detective Smith walked down toward the area they had just left. According to him, “Smith was just searching around, looking at the area like they normally do, I guess, looking for drugs that might be dropped or found.” Detective Smith then stopped, picked up a bag and turned around and told the other detective to “ ‘[p]ut cuffs on the guy in the black shirt/ ” i.e., appellant. Then Detective Smith spoke to another person who had been a part of the group, Tyrone Baldwin, asking him to whom the bag belonged. When Detective Smith returned to where Barnes and appellant were being detained, Barnes told Detective Smith that the bag was not appellant’s, and asked why he was arresting appellant. Detective Smith told Barnes to shut his mouth, or he would arrest him, too. Detective Smith then “yelled out to the other officer and said, ‘Didn’t you see him drop it?’ And Officer Johnston said, ‘Yes, I saw him.’ ”
At the completion of the proffer, the state renewed its objection to any testimony regarding comments allegedly made by Detective Smith, arguing that such testimony was hearsay and, therefore, inadmissible. Defense counsel argued that the testimony regarding the comments allegedly made by Detective Smith was not hearsay because it was not being offered to prove the truth of the matters asserted. Rather, the testimony was being offered to impeach the testimony of Detectives Smith and Johnston. The trial court agreed with the state, and sustained its objections to the testimony.
Appellant, testified next. Defense counsel attempted to elicit from appellant what the various detectives, and in particular Detectives Johnston and Smith, had said during the encounter which ended in appellant’s arrest. Appellant testified that, as Detective Johnston approached, the group broke up and everyone started to walk away, at which time Detective Johnston said, “ ‘Don’t nobody want to talk to me today?’ ” The state objected that this was hearsay. Defense counsel responded that this, and testimony which would follow, was not being offered to prove the truth of the matters asserted. Instead, it was intended to depict the states of mind of the various detectives at the time. The trial court sustained the objection. After the court had sustained two similar objections, defense counsel asked to be permitted to proffer the rest of her case. She told the court that her defense was that, prior to appellant’s arrest, Detective Smith “had threatened he was going to get [appellant].” She said that she intended to have appellant testify about the prior threats, and then to corroborate appellant’s testimony by presenting the testimony of others who had witnessed those threats. According to her, her theory was that this provided “a motive for the officers testifying as they did.”
*902 On proffer, appellant said that, when Detective Johnston asked whether anybody was going to stay and talk to him, everyone except “a guy named Tyrone” walked off. Detective Johnston stayed behind with Tyrone. Detective Johnston said, “ T got at least one going to talk to me.’ ” When appellant got to a bus stop at the edge of the vacant lot, Detective Smith came up to him and said, “ ‘Where you going?’ ” At that point, another detective grabbed appellant and his brother. Detective Smith told the other detective to hold appellant and his brother. Detective Smith said, “ ‘I’m going to walk down there and see if they dropped any dope.’ ” Detective Smith walked down the path, toward where the group had been. He “found something,” then walked over and began talking to Tyrone. According to appellant, Detective Smith “was telling Tyrone, talking about ‘Whose dope this is. Ain’t that [appellant’s] dope?’ Say, ‘Ain’t that [appellant’s] dope?’ And Tyrone was giving the impression that he didn’t know, doing his hands like that.” Detective Smith then held the bag in the air and started walking toward appellant, saying “ ‘I’m tired of seeing you on the street.’ ” Detective Smith then told the other detectives to handcuff appellant.
Appellant also testified on proffer that, while Detective Johnston was transporting him to the jail, appellant asked, “ ‘Why you taking me to jail? You know it ain’t none of mine.’ ” According to appellant, Detective Johnston responded, “ ‘Shut up. I know it ain’t none of yours.’ ... ‘I’m tired of seeing you on the street. You got a big mouth. You always running your mouth every time we see you.’ ”
According to appellant, approximately two months before his arrest, he had been in court testifying on behalf of a friend. As he was leaving, Detective Smith said to appellant and another person with whom appellant was walking, “ ‘I’ll be seeing you two.’ ” Then, approximately a month before appellant’s arrest, Detectives Smith and Johnston were parked on appellant’s aunt’s property. Appellant’s aunt told him to go and tell the detectives to get off of her property. Appellant did that, at which time Detective Smith “jumped out” of the car and said, “ ‘Little punk, I can do whatever I want to. I work for the Leon County Sheriff’ and “ ‘You little punk, I’m going to get you. Keep running your mouth, I’m going to get you. I’m going to take you to jail.’ ” At that point, Detective Johnston said to appellant, “ ‘You need to go on about your business.’ ” (Appellant said that his aunt, his grandmother, and two of his cousins had been on the porch of his aunt’s house when this incident occurred.) Finally, sometime after he had been arrested (and, apparently, released on bond), appellant was in the street near his aunt’s house, when Detectives Smith and Johnston drove up. The detectives told appellant that “they didn’t want [him] hanging around there.” Appellant responded, “ ‘Man, you know my aunt lives here.’ ... ‘You got your little arrest. Why don’t you go on and stop harassing me.’ ” According to appellant, either Detective Smith or Detective Johnston said, “ ‘Shut up, little punk, I’ll put you back in jail again like I did last time. All I got to do is say you dropped some dope.’ ”
Appellant next proffered the testimony of his aunt, grandmother and two cousins regarding the incident involving Detectives Johnston and Smith which appellant claimed had occurred at his aunt’s house approximately a month before his arrest. The grandmother could remember virtually nothing about the incident. Although the aunt and two cousins remembered somewhat more about what had happened, none was able to testify from her own knowledge who the detective involved in the incident had been.
Defense counsel concluded her proffer, at which point the state renewed its objection that all of the proffered testimony regarding discussions between appellant and the detectives or comments made by the detectives was hearsay. Defense counsel argued at length that the proffered testimony was admissible to show bias on the part of Detectives Johnston and Smith, and a motive for them to come into court and testify that appellant had dropped the bag. The trial court sustained the state’s *903 objection, and refused to permit the jury to hear any of the testimony regarding either the threats which appellant claimed Detectives Smith and Johnston had made or the comments which appellant claimed Detectives Smith and Johnston had made when he was arrested.
“The trial court has wide discretion concerning the admissibility of evidence, and in the absence of an abuse of discretion, its ruling regarding admissibility will not be disturbed.” Bradford v. State, 460 So.2d 926, 930 (Fla. 2d DCA 1984), review denied, 467 So.2d 999 (Fla.1985). Applying this standard, we do not find any abuse of discretion with regard to the trial court’s decision to exclude the proffered testimony of appellant’s aunt, grandmother and two cousins. However, we are unable to reach a similar conclusion as to the decision to exclude the testimony of appellant and his brother regarding comments they claim were made by the detectives at the time of the encounter which ended in appellant’s arrest and the testimony of appellant regarding other confrontations he claimed he had had with Detectives Johnston and Smith.
We believe that defense counsel below correctly argued that testimony regarding the comments made by the detectives during the encounter which resulted in appellant’s arrest and the conversations during other confrontations between appellant and Detectives Johnston and Smith was not hearsay. Section 90.801(1)(c), Florida Statutes, defines “[h]earsay” as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted ” (emphasis added). Thus, “[o]ut-of-court statements constitute hearsay only when offered in evidence to prove the truth of the matter asserted.” Anderson v. United States, 417 U.S. 211, 219, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 20, 28-29 (1974). “The prohibition of the hearsay rule ... does not apply to all words or utterances merely as such_ The hearsay rule excludes extrajudicial utterances only when offered for a special purpose, namely, as assertions to evidence the truth of the matter asserted.” 6 Wigmore, Evidence § 1766, at 251 (Chadbourn rev. 1976).
Neither the testimony regarding the comments made by the detectives during the encounter which ended in appellant’s arrest nor the testimony regarding conversations during prior confrontations between appellant and Detectives Johnston and Smith was “offered in evidence to prove the truth of the matter asserted.” Rather, the former was offered to establish what Detectives Johnston and Smith knew or believed during the encounter, and bias on their part toward appellant; and the latter was offered to establish bias on the part of Detectives Johnston and Smith toward appellant. “[Ujtterances which circumstantially indicate a specific state of mind causing them” do not constitute hearsay. Id. § 1790, at 320. Likewise, utterances of a witness indicating bias are admissible for impeachment purposes. They do not constitute hearsay when offered for such a purpose. Id. § 1792.
In Webb v. State, 336 So.2d 416 (Fla. 2d DCA 1976), the defendant had been accused and convicted of sale of marijuana to an officer of the Anna Maria Police Department. At trial, the defense had been prohibited from offering testimony that, approximately two weeks before his arrest for sale of marijuana, defendant had filed suit against the City of Anna Maria and its Police Chief, alleging false arrest; and the Police Chief had had a conversation with his former Chief Detective, during which the latter had suggested “the possibility of arresting [defendant] on a DWI charge to discourage him from prosecuting that suit,” to which “[t]he Chief replied that [he] should not worry about it because [defendant] was ‘being taken care of.’ ” Id. at 418. On appeal, the court concluded that the testimony had been improperly excluded, and reversed. The court said:
Bias or prejudice of a witness has an important bearing on his credibility, and evidence tending to show such bias is relevant. We make no comment on the merits of appellant’s defense, that he was “framed” by the police department *904 because of his civil suit, but we hold he was entitled to have that evidence presented to the jury. Here, both appellant’s and [the former Chief Detective’s] testimony would have shed light on any bias or interest the Police Chief and his subordinates may have had in the outcome of appellant’s criminal trial.

Id.

A similar result was reached in Lombardi v. State, 358 So.2d 220 (Fla. 1st DCA 1978). There, the defendant had been accused and convicted of two counts of assault on a law enforcement officer, and one count of attempted possession of a concealed weapon. At trial, defendant had been permitted to testify that one of the officers who had stopped defendant for an alleged traffic violation which led to defendant’s arrest had said “that he ... understood appellant ‘liked to complain about officers,’ and that appellant was ‘a troublemaker.’ ” Id. at 221. However, defendant had been prohibited from testifying that he had previously filed a civil action against the Sheriff’s Department, and that one of the officers against whom he had filed the action had been involved in his arrest. Concluding that the trial court had erroneously excluded such testimony, this court reversed, citing Webb.
We believe that, for purposes of this appeal, this case is indistinguishable from Webb and Lombardi. As in those cases, so here, there was a direct conflict between the testimony of appellant and his witnesses and the testimony of the detectives. The state’s position was that Detectives Johnston and Smith had seen appellant discard a bag which contained drugs; appellant’s position was that he had not possessed any drugs, and that he was being “framed” by Detectives Johnston and Smith because of their animus toward him. It is clear that the testimony which the trial court excluded was critical to appellant’s theory of the case. Therefore, we are constrained to conclude that, when the trial court refused to permit defense counsel to present that testimony to the jury, it abused its discretion. Accordingly, we must reverse appellant’s convictions, and remand for a new trial.
In conclusion, we wish to make it clear that what we have written is not intended as an expression of opinion regarding the merit of appellant’s defense. Whether appellant’s version of the facts or that presented by the state’s witnesses is more believable is a question which must be answered by the jury, as the trier of fact. Today, we hold only that appellant was entitled to present the proffered testimony regarding that defense to the jury.
REVERSED and REMANDED, with directions.
WIGGINTON and ALLEN, JJ., concur.