801 So.2d 189 (2001)
Wardell EVERETT, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-1427.
District Court of Appeal of Florida, Fourth District.
December 5, 2001.
*190 Carey Haughwout, Public Defender, and Benjamin W. Maserang, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Claudine M. LaFrance, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
Appellant challenges his conviction for delivery of cocaine on the ground that the court abused its discretion in refusing to allow him to testify that the police officer who purchased the drugs from appellant had told appellant after a prior encounter that the officer would arrest appellant the next time he saw him on the street. Because this testimony was non-hearsay evidence of the declarant's state of mind, showed bias, and was essential to appellant's defense of entrapment, we hold that the trial court erred in refusing to admit it. We, therefore, reverse.
Wardell Everett ("appellant") was charged with the sale or delivery of cocaine at/near a school. Appellant raised the defense of entrapment, alleging the arresting officer targeted him and induced him into committing the crime.
At trial, Detective Roderick McGowan ("McGowan") testified that he was conducting an undercover buy-bust operation at a targeted location. On the day of the operation, McGowan approached appellant for no particular reason other than he was the only person in the immediate area of the targeted location. He denied specifically looking for appellant.
McGowan inquired about purchasing $40 worth of crack cocaine and testified that he only had to ask appellant once. Appellant replied that he could help McGowan purchase the crack and asked for the $40. McGowan paid appellant with two twenty dollar bills. McGowan denied that appellant initially refused to help him purchase the crack and that he had to offer appellant five dollars to go get the drugs.
After taking McGowan's money, appellant jumped a chain linked fence and made contact with a man, later discovered to be Jackie Stokes ("Stokes"). The two conversed, appellant handed Stokes the money, and Stokes handed some items to appellant. Appellant returned and handed McGowan several small clear baggies containing crack cocaine. The whole incident took about a minute. McGowan then gave the signal and appellant was arrested. Two other detectives arrested Stokes and recovered the same two twenty dollar bills. According to McGowan, he learned only after the arrest that appellant was the same man he previously arrested a month before.
Appellant testified in his own defense. He explained that he had a run-in with McGowan on a prior occasion. On that date, appellant was riding his bicycle to his mother's house and stopped to visit with some friends a few houses away. Suddenly, a van pulled up and six officers jumped out, including McGowan. The officers were responding to the location due to *191 calls. According to appellant, when he refused to abide by the officers' instructions to get off his bicycle and sit on the ground (because of his injured back), one of the officers "snatched" him off the bicycle. McGowan put a milk crate down for appellant to sit on but then kicked it as appellant sat down, causing him to fall on the ground. Appellant threatened to call "internal revenue and report this harassment" and was arrested for disorderly conduct. However, according to McGowan, appellant simply mouthed off and was arrested for disorderly conduct.
Appellant then testified that McGowan said something after arresting him on the first occasion, and the state imposed a hearsay objection. Appellant's counsel argued that it went to the officer's state of mind, not the truth of the matter. The court allowed appellant to proffer the statement, and appellant testified that McGowan "told me every time he see me on the street that he was gonna arrest me." The court sustained the objection.
With respect to the instant arrest, appellant testified that he had been drinking heavily since before noon. He was waiting for his girlfriend on the corner when someone approached him and asked to buy a "40." Appellant replied that he did not sell drugs and directed the man to other people down the street. Appellant had no idea the man was McGowan until after the fact. Appellant tried to walk away, but McGowan followed him and said he did not trust the other guys, he trusted appellant. Appellant said no about five or six times, and McGowan eventually offered him five dollars to get the drugs. To get rid of McGowan, appellant took forty dollars and went over to someone he knew as a "crack-head in the neighborhood," Stokes. Stokes gave appellant thirty-five dollars worth of crack, and appellant returned and gave it to McGowan. Two to three minutes later, the police arrested him.
Appellant admitted that he had nine prior felony convictions. Only one involved drugs and occurred in 1984. Around that same time, he almost died from a disease he contracted by sharing needles and swore off drugs forever. On cross, appellant admitted that he also had five prior petty theft convictions.
The court denied appellant's motions for a judgment of acquittal at the close of both the state's case and again at the close of all of the evidence. During closing argument, appellant's counsel said that McGowan had it out for appellant and that is "what this case is all about."
Appellant argues that McGowan's threat to arrest appellant, which statement went to the heart of his entrapment defense, should have been admitted as evidence of McGowan's state of mind or as non-hearsay. The state answers that the trial court correctly excluded the statement as inadmissible hearsay. We conclude the trial court reversibly erred in excluding McGowan's threat.
An out of court statement offered for the truth of the matter asserted is generally inadmissible hearsay. See §§ 90.801(1)(c), .802, Fla. Stat. (2000). However, the same statement may be admissible to prove a variety of issues besides the truth of the matter, such as the declarant's state of mind. See Foster v. State, 778 So.2d 906, 914-15 (Fla.2000); Lark v. State, 617 So.2d 782, 788 (Fla. 1st DCA 1993). The same statement may also be admissible if it satisfies the requirements of one of the many hearsay exceptions. One such exception provides:
(a) A statement of the declarant's then-existing state of mind, emotion, or physical sensation, including a statement of intent, plan, motive, design, mental feeling, *192 pain, or bodily health, when such evidence is offered to:
1. Prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when such state is an issue in the action.
2. Prove or explain acts of subsequent conduct of the declarant.
(b) However, this subsection does not make admissible:
1. An after-the-fact statement of memory or belief to prove the fact remembered or believed, unless such statement relates to the execution, revocation, identification, or terms of the declarant's will.
2. A statement made under circumstances that indicate its lack of trustworthiness.
§ 90.803(3), Fla. Stat. (2000).
Appellant contends McGowan's threat was non-hearsay, as it did not go to the truth of the matter asserted but only to McGowan's state of mind. A case directly on point is Fields v. State, 608 So.2d 899 (Fla. 1st DCA 1992). In that case, the trial court precluded the defendant from testifying about a prior encounter with the arresting officers where they threatened that they were "going to get [him]" and "going to take [him] to jail." Id. at 902. The first district reversed because the defendant's testimony was not offered for the truth of the matter asserted. See id. at 903.
[It] was offered to establish bias on the part of Detectives Johnston and Smith toward appellant. "[U]tterances which circumstantially indicate a specific state of mind causing them" do not constitute hearsay. Likewise, utterances of a witness indicating bias are admissible for impeachment purposes. They do not constitute hearsay when offered for such a purpose.
Id. (quoting 6 Wigmore, Evidence § 1790 (Chadbourn rev.1976)).
In this case, McGowan's threat to arrest appellant the next time he saw him was offered to establish McGowan's state of mind, namely his bias towards appellant. That bias was highly relevant to appellant's defense that McGowan entrapped him into acquiring and delivering the cocaine. Further, the threats could have impeached McGowan's testimony that he did not specifically target appellant. As appellant notes, this case turned on a credibility determination between appellant and McGowan because they were the only ones with knowledge of the transaction. Similar to Fields, the trial court erred in excluding the proffered testimony.
The state urges that any error was harmless in light of the other testimony regarding the events of February 5th. It claims the court and jury already knew that McGowan may have been motivated to single out appellant because of their prior experience. This argument only reinforces why the error was harmful. When addressing an entrapment defense, evidence of the government agent's state of mind is very relevant and cannot be considered harmless if there is "strong evidence of government involvement and persistence." Morris v. State, 487 So.2d 291, 294 (Fla.1986). Further, because the case boiled down to a credibility determination, evidence tending to impeach McGowan and demonstrate his bias would be highly relevant. It therefore cannot be said that the error was harmless beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129, 1138 (Fla.1986).
Based on the foregoing reasoning, we reverse and remand for a new trial. Because this case must be reversed on this *193 issue, we do not address the remaining issues on appeal.
GUNTHER and GROSS, JJ., concur.