DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PLANTATION GENERAL HOSPITAL LIMITED PARTNERSHIP,**
d/b/a **PLANTATION GENERAL HOSPITAL,**
Appellant,

v.

**DIVISION OF ADMINISTRATIVE HEARINGS** and
**BERNARD BELZI,** individually and as Personal Representative of
the **ESTATE OF PATRICIA BELZI,** deceased, and
as legal guardian and parent of A.B., a minor,
Appellees.

No. 4D16-2652

[April 4, 2018]

Appeal from the State of Florida, Division of Administrative Hearings;
L.T. Case No. 15-3711MA.

Mark Hicks and Mary Gniadek of Hicks, Porter, Ebenfeld & Stein, P.A.,
Miami, and Carol Glasgow and John Mauro of Billing, Cochran, Lyles,
Mauro & Ramsey, P.A., Fort Lauderdale, for appellant.

Robert W. Kelley and Bonnie A. Navin of Kelley Uustal, PLC, and Paul
R. Regensdorf, High Springs, for appellees.

WARNER, J.

In this appeal from a final arbitration award for a medical malpractice
claim involving the death of a woman who was both a wife and mother, the
appellants contend that the arbitration panel erred in awarding economic
damages for the loss of companionship and guidance to the husband and
child. The panel also awarded the maximum statutory limitation as an
award for non-economic damages. We reverse the award of economic
damages for loss of companionship and guidance, as these are non-
economic damages covered by the statutory limitation on such damages.
The appellants also claim that the award for lost support should be
reversed because of the introduction of inadmissible hearsay state of mind
evidence. We affirm the loss of support award, as the evidence was
admissible and the award was supported by competent substantial

evidence.  Because of our partial reversal, we also reverse the attorney's fee award for recalculation.

The Estate of Patricia Belzi and Bernard Belzi (collectively "the Estate"), brought a medical negligence, wrongful death action against Dr. Andrew Agbi and Plantation General Hospital (collectively "the Hospital") alleging that their medical negligence caused the death of Belzi's twenty-four-year-old wife, Patricia, when she was eight months pregnant with their child, Abigail, who survived.  After presuit investigation by the Hospital, the parties agreed to voluntary binding arbitration pursuant to section 766.207, Florida Statutes (2014) *et seq.*, to determine damages.  Pursuant to the statute, the damages recoverable in arbitration proceedings are limited to:

> (a) Net economic damages shall be awardable, including, but not limited to, past and future medical expenses and 80 percent of wage loss and loss of earning capacity, offset by any collateral source payments.

> (b) Noneconomic damages shall be limited to a maximum of $250,000 per incident . . . .

§ 766.207(7), Fla. Stat. (2014).  Our supreme court has interpreted section 766.207(7)(b) as permitting the $250,000 limit on non-economic damages to apply to each claimant.  *St. Mary's Hosp., Inc. v. Phillipe*, 769 So. 2d 961, 967-68 (Fla. 2000).

At the arbitration hearing, the Estate did not seek medical expenses, and the parties stipulated to the maximum $250,000 each in non-economic damages for Belzi and Abigail.  The damages issues presented for the arbitration panel to decide were for loss of services, support, and attorney's fees.

The Hospital objected to two facets of the Estate's damage case which form the basis of the issues on appeal.  First, it objected to the Estate's economics expert's inclusion of loss of guidance and companionship in the economic losses suffered by Belzi and his daughter, which it contended was an attempt to value non-economic damages for which they were also awarded $250,000 each.  Second, it objected to hearsay evidence offered as to Patricia's aspirations and goals.  A vocational expert used this evidence in projecting Patricia's occupational trajectory, leading to the amount of lost support calculated by the economics expert.

2

Both prior to trial and at trial, the Hospital objected to the Estate's expert's testimony regarding calculations on lost companionship and guidance as compensable services. It argued that this was an attempt to circumvent the statutory cap on non-economic damages in medical malpractice arbitrations by labelling non-economic losses of companionship and guidance as "economic," thus seeking a recovery beyond the $250,000 per claimant cap. The Chief Arbitrator overruled the Hospital's objections.

At trial, the Estate's economic expert offered her opinion as to the economic value of the loss of companionship and guidance suffered by Belzi and Abigail. The expert reviewed the statistical data from the National Vital Statistics Reports to determine Patricia's life expectancy and retirement age. She examined how many hours per week Belzi and Abigail would have received "services" from Patricia for "companionship, advice and counsel." She talked to family and friends to determine the time Patricia spent or would have spent on these activities. However, she had no information that Belzi had utilized or was intending to accept "companionship" or "counseling" from third parties as a substitute for his wife's companionship and counsel after her death.

The Estate's expert examined the wage rates that someone would have to pay in the marketplace to hire people to perform services, such as companions and counselors. Her focus was on determining the economic value of the services which were provided by Patricia, which were now lost. For Belzi, she calculated that Patricia and Belzi spent about twenty hours together a week. For Abigail, she calculated various numbers of hours per year based upon Abigail's age. For both Belzi and Abigail, the expert's report identified the source of value for paid companion services as a New Jersey "Market Survey of Long-Term Care Costs, Various MetLife Market Surveys of Nursing Home, Assisted Living, Adult Day Services, and Home Care Costs, and various Genworth Cost of Care Surveys, Home Care Providers, Adult Day Health Care Facilities, Assisted Living Facilities and Nursing Homes." The dollar cost in New Jersey was adjusted for Florida wages.

To calculate the amounts for advice and counsel, the expert averaged the hourly wage of a variety of occupations which offer advice, including: child, family, and school social workers; social and human service assistants; marriage and family therapists; residential advisors; loan officers; tax preparers; post-secondary business teachers; financial managers; self-enrichment education teachers; elementary school teachers; secondary school teachers. She applied this averaged hourly rate to the hours she considered that Patricia would have counseled both

3

her husband and her daughter. She testified that these amounts did not include any emotional loss by Belzi and Abigail. After this presentation, the Hospital again objected, and again the Chief Arbitrator overruled the objection, stating that these elements were part of the economic loss of services. In addition to loss of support, the expert calculated the value of other lost services which the Hospital does not contest.

To determine the economic value of lost support from Patricia, who was twenty-four at the time of her death, the Estate presented the testimony of family and friends as to Patricia's aspirations and goals, to which the Hospital objected but was overruled. The Estate presented a vocational expert who opined the likely vocational path of Patricia had she not died.

Relying on the opinion of the vocational expert, the Estate's economic expert opined as to the present value of lost support to Belzi. The Estate presented a total damage calculation to Belzi and Abigail of $4,010,314, broken down as follows:

| Past Years | Future Years | Total | Component of Analysis |
|---|---|---|---|
| $ 8,167 | $ 1,712,046 | $ 1,720,213 | adjusted income |
| 29,771 | 770,935 | 800,706 | household services |
| 32,738 | 986,382 | 1,019,120 | companionship services to spouse |
| 42,560 | 231,948 | 274,507 | companionship services to daughter |
| 3,437 | 86,661 | 90,098 | advice and counsel services to spouse |
| 6,873 | 75,411 | 82,285 | advice and counsel services to daughter |
| 23,385 | - | 23,385 | funeral expenses |
| **$ 146,931** | **$ 3,863,383** | **$ 4,010,314** | **present value of total loss** |

The Hospital presented its own vocational expert and economics expert who calculated lost support at a significantly lower amount (about $625,000 less than the Estate's calculation). After presentation of all the evidence, the arbitration panel awarded the following:

| Arbitration Panel Award | |
|---|---|
| Past and Present Money Value of Future Loss of Support | $1,395,501.08 |
| Past Loss of Household Services | $115,379.00 |
| Present Money Value of Future Loss of Household Services | $1,696,711.20 |
| Funeral Expenses Claim | $23,385.00 |
| Non-economic damages to Bernard Belzi | $250,000.00 |
| Non-economic damages to Abigail Belzi | $250,000.00 |
| **Total Arbitration Award** | $3,730,976.28 |

4

From this award, the Hospital appeals.

## I.    Standard of Review

The parties dispute the standard of review for arbitration awards. The Hospital contends that an arbitration award under section 766.207, Florida Statutes (2014), constitutes final agency action, and any appeal is governed by section 120.68, as provided in section 766.212(1), Florida Statutes (2014). ("An arbitration award and an allocation of financial responsibility are final agency action for purposes of s. 120.68. Any appeal . . . shall be limited to review of the record, and shall otherwise proceed in accordance with s. 120.68."). Relevant portions of section 120.68(7) provide the relevant standards to be applied to this appeal:

> (7) The court shall remand a case to the agency for further proceedings consistent with the court's decision or set aside agency action, as appropriate, when it finds that:
>
> > (a) There has been no hearing prior to agency action and the reviewing court finds that the validity of the action depends upon disputed facts;
> >
> > (b) The agency's action depends on any finding of fact that is not supported by competent, substantial evidence in the record of a hearing conducted pursuant to ss. 120.569 and 120.57; however, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact;
> >
> > . . . .
> >
> > (d) The agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action . . . .

Pursuant to subsection (d), the appellate court reviews an agency's conclusions of law de novo. *Estrada v. Mercy Hosp., Inc.*, 121 So. 3d 51, 54 (Fla. 3d DCA 2013).

The Estate, on the other hand, argues that the court must engage in "limited appellate review of the arbitration award requiring a showing of 'manifest injustice'" to reverse. *Univ. of Miami v. Echarte*, 618 So. 2d 189, 194 (Fla. 1993). Although the supreme court used that phrase in listing the benefits of arbitration under the statute, it was not a holding of the

5

opinion. Moreover, the only place "manifest injustice" appears in the Medical Malpractice Arbitration statute is in section 766.212(2) which provides that an appeal does not stay an arbitration award and that "[t]he district court of appeal may order a stay to prevent manifest injustice, but no court shall abrogate the provisions of s. 766.211(2)." The Estate also cites *St. Mary's Hospital, Inc. v. Phillipe*, 769 So. 2d 961 (Fla. 2000), which uses the manifest injustice language but in discussing a stay of the arbitration award, thus applying section 766.212(2). It also quoted from *Echarte* as to the benefits of arbitration, but again, the language is not the holding of the opinion.

The statute provides the standard of review for an arbitration award. The supreme court has never rejected the application of section 120.68(7) in medical malpractice binding arbitration, and we will apply the statutory standard.

## II. Inclusion of Companionship and Guidance as Economic Damages

The Hospital argues that the panel's award for lost "household services" erroneously included non-economic damages for lost companionship and lost advice, guidance and counsel, allowing the Estate to do an "end run" around the statutory limit on non-economic damages of $250,000 per claimant. Whether such damages are economic or non-economic is a question of the proper application of the statute, which we review de novo. § 120.68(7)(d), Fla. Stat.

The Florida Legislature amended the Medical Malpractice Act in 2003 to limit the damages recoverable in medical negligence wrongful death arbitration. § 766.207(7)(b), Fla. Stat. Section 766.202(3) and (8), Florida Statutes (2014), define economic and non-economic damages as follows:

> (3) "Economic damages" means financial losses that would not have occurred but for the injury giving rise to the cause of action, including, but not limited to, past and future medical expenses and 80 percent of wage loss and loss of earning capacity to the extent the claimant is entitled to recover such damages under general law, including the Wrongful Death Act.
>
> . . . .
>
> (8) "Noneconomic damages" means nonfinancial losses that would not have occurred but for the injury giving rise to the

6

cause of action, including pain and suffering, inconvenience, physical impairment, mental anguish, disfigurement, loss of capacity for enjoyment of life, and other nonfinancial losses to the extent the claimant is entitled to recover such damages under general law, including the Wrongful Death Act.

The Wrongful Death Act allows recovery for loss of support and services, but places loss of companionship and guidance within the same category as pain and suffering, which are non-economic damages. As applicable in this case, section 768.21 provides:

(1) Each survivor may recover the value of lost support and services from the date of the decedent's injury to her or his death, with interest, and future loss of support and services from the date of death and reduced to present value . . . .

(2) The surviving spouse may also recover for loss of the decedent's companionship and protection and for mental pain and suffering from the date of injury.

(3) Minor children of the decedent, and all children of the decedent if there is no surviving spouse, may also recover for lost parental companionship, instruction, and guidance and for mental pain and suffering from the date of injury . . . .

The supreme court and other courts have also categorized companionship and guidance as non-economic damages. In *St. Mary's*, the supreme court was asked to determine whether the $250,000 limit per incident on non-economic damages under section 766.207 limited the recovery for all claimants to $250,000 or limited each claimant's recovery to $250,000. In considering the question, the court looked to how "non-economic damages" were treated in other wrongful death cases. It pointed to *National Railroad Passenger Corp. v. Ahmed*, 653 So. 2d 1055, 1056 (Fla. 4th DCA 1995), and an award for "the loss of parental companionship, instruction and guidance, and [for] the child's pain and suffering" for the children of the decedent in that case. *St. Mary's*, 769 So. 2d at 970 (alteration in original). Thus, it equated these losses with non-economic damages. In addition, loss of parental guidance has been held to be an intangible loss. *Alamo Rent-A-Car Inc. v. Clay*, 586 So. 2d 394, 395 (Fla. 3d DCA 1991); *see also* cases cited in "*Excessiveness or Adequacy of Damages Awarded for Noneconomic Loss Caused by Personal Injury or Death of Parent*," 61 A.L.R. 4th 251 (1988) (awards in cases for loss of companionship and guidance). Finally, the standard jury instructions inform the jury of the elements of damages recoverable in a wrongful death

claim, and include in one element damages for "loss of (decedent's) companionship and protection, and [her] [his] mental pain and suffering as a result of (decedent's) injury and death." *See* Fla. Std. Jury Instr. (Civ.) 502.2d.  Likewise, the standard jury instruction for a child's loss of a parent also combines "loss by (name all eligible children) of parental companionship, instruction and guidance, and [his] [her] [their] mental pain and suffering as a result of (decedent's) injury and death."  Fla. Std. Jury Instr. (Civ.) 502.2e.  It is clear that the statutory framework equates loss of companionship, protection, and guidance as non-economic damages and thus subject to the statutory limitation on such damages.

At common law, the loss of companionship and protection of a spouse was termed a "loss of consortium."  Our supreme court described such a claim as follows:

> We are only concerned with loss of consortium, by which is meant, the companionship and fellowship of husband and wife and the right of each to the company, cooperation and aid of the other in every conjugal relation.  Consortium means much more than mere sexual relation and consists, also, of that affection, solace, comfort, companionship, conjugal life, fellowship, society and assistance so necessary to a successful marriage.

*Gates v. Foley*, 247 So. 2d 40, 43 (Fla. 1971).  This is separate from the pecuniary losses which a spouse may suffer for loss of services.  In *Lithgow v. Hamilton*, 69 So. 2d 776, 778 (Fla. 1954), the court listed the damages recoverable by a husband for the loss of his wife allowable under the common law, including pecuniary services provided by the wife, which the husband "will have to [ ] replace [ ] by hiring services," and loss of consortium.  *Id.*  Loss of consortium was not the type of service which was replaced by hiring services, thus the intangible and non-economic nature of those losses.

Similarly, the loss of parental companionship and guidance has always been treated as a non-economic element of damage.  In *Zorzos v. Rosen*, 467 So. 2d 305, 308 (Fla. 1985), the supreme court described the authorized damages which a minor can recover under the wrongful death act, which included "tangible losses such as support, and *intangible losses such as* services and *parental companionship, instruction and guidance and mental pain and suffering*." (emphasis added); *see also* Fla. Std. Jury Instr. (Civ.) 502.2e.

The loss of consortium of a spouse cannot be equated, as the economics expert sought to do in this case, with a paid companion of a nursing home or assisted living patient. To do so denigrates the marital relationship. "Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred." *Laird v. State*, 342 So. 2d 962 (Fla. 1977) (quoting *Griswold v. Connecticut*, 381 U.S. 479, 486 (1965)). To suggest that such a relationship can be replaced by a paid companion, thus creating an economic loss, is contrary to all legal precedent; indeed, it goes against social and moral understanding of the unique and special nature of the marital relationship. The same may be said of the loss of companionship and guidance of a parent for a child. While we recognize that the legislative cap of $250,000 for both loss of companionship and pain and suffering may appear woefully inadequate in circumstances of the death of a spouse or parent, the supreme court has held the statute constitutional. *See Echarte.* Any change in that amount must come from the Legislature.

We therefore hold that loss of companionship and protection for the spouse and loss of parental companionship and guidance for a child are non-economic damages. As such, they fall within the statutory limitation on non-economic damages. *See* § 766.207(d), Fla. Stat. Because the chief arbitrator overruled the Hospital's objections to the economic expert's testimony regarding loss of companionship, and the award for household services clearly included an award for such services, we reverse and remand for the redetermination of the amount awarded for household services, both past and future. The arbitrators must deduct from that portion of the award any portion in excess of the amount of compensable household services.[1]

## II.    Lost Support Award

In challenging the arbitrator's award for future loss of support, the Hospital contends that the Chief Arbitrator erred in admitting evidence of Patricia's intentions with respect to her future occupation under the "state of mind" exception to the hearsay rule. *See* § 90.803(3)(a)1, *Fla. Stat.* (2014). The statements were offered to prove her intent and plan, which were relevant to ascertaining her career progression for the purposes of lost support, not to prove the truth of the matter. *See e.g. Everett v. State*, 801 So. 2d 189, 191-92 (Fla. 4th DCA 2001) (noting that an out of court statement may be admissible to prove declarant's state of mind); *Blackburn v. Aetna Freight Lines, Inc.*, 368 F.2d 345, 348 (3d Cir. 1966); *Whittle v. Schemm*, 402 F. Supp. 1294, 1299 (E.D. Pa. 1975); *Covell v. Colburn*, 13

---

[1] The Estate's expert allocated a total of $800,706 for these services, while the Hospital's expert allocated a total of $712,046 for these services.

9

N.W.2d 275, 277 (Mich. 1944), *overruled in part by Thompson v. Ogemaw Cty. Bd. of Rd. Comm'rs*, 98 N.W.2d 620 (Mich. 1959); *cf. Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 705 (Tenn. Ct. App. 1999) (noting that a student's career plans are relevant in determining his or her lost earning capacity). In addition, competent substantial evidence supported the arbitrator's award. Therefore, we must affirm. *See* § 120.68(10), Fla. Stat. ("If an administrative law judge's final order depends on any fact found by the administrative law judge, the court shall not substitute its judgment for that of the administrative law judge as to the weight of the evidence on any disputed finding of fact."); *Heifetz v. Dep't of Bus. Regulation*, 475 So. 2d 1277, 1281 (Fla. 1st DCA 1985) ("It is the hearing officer's function to consider all the evidence presented, resolve conflicts, judge credibility of witnesses, draw permissible inferences from the evidence, and reach ultimate findings of fact based on competent, substantial evidence.")

### III.  Attorney's Fees.

Section 766.207(7)(f), Florida Statutes (2014), governs attorneys' fees in arbitration proceedings and states that "[t]he defendant shall pay the claimant's reasonable attorney's fees and costs, as determined by the arbitration panel, but in no event more than 15 percent of the award, reduced to present value." The chief arbitrator awarded fifteen percent of the total amount of the award, without receiving any documentation of what a reasonable award should be. However, prior to the arbitrators' deliberations, the chief arbitrator asked whether both parties agreed to a fifteen percent fee, and the Hospital's attorney accepted. The Hospital first objected to the fee in its motion for rehearing, but new matters may not be addressed in a motion for rehearing. *See Best v. Educ. Affiliates, Inc.*, 82 So. 3d 143, 146 (Fla. 4th DCA 2012). Therefore, we find the Hospital's challenge to the amount is unpreserved. Nevertheless, because we have reversed the arbitration award for recalculation, we also reverse the attorney's fees award for recalculation based upon any new award entered in accordance with this opinion.

### Conclusion

For the foregoing reasons, we reverse, in part, the arbitration award. We direct that the panel reconsider and remove from the past and future loss of household services any amounts for loss of companionship and guidance for either Belzi or his daughter Abigail. After readjusting the award, the panel should then recalculate the attorney's fee award.

*Reversed in part; remanded with instructions.*

TAYLOR and DAMOORGIAN, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***