394 So.2d 121 (1980)
Linda HARMON, Appellant,
v.
STATE of Florida, Appellee.
No. LL-336.
District Court of Appeal of Florida, First District.
May 9, 1980.
*122 Michael J. Minerva, Public Defender and Margaret Good, Asst. Public Defender for appellant.
Jim Smith, Atty. Gen. and Lee Mandell, Asst. Atty. Gen., for appellee.
LARRY G. SMITH, Judge.
Linda Harmon appeals her conviction of robbery with a weapon. Although numerous grounds for reversal are presented, all of which we have considered, we find it necessary to elaborate upon only three of these in reaching our decision to reverse the conviction.
Appellant's counsel objected to statements made by the prosecuting attorney during voir dire examination of the jury, and moved for a mistrial, which was denied. The complained of activity began during the initial stages of jury selection, after six prospective jurors had been seated and generally examined, at which time the prosecuting attorney addressed the jury collectively, as follows:
Now, I want to ask you this question and, normally, we don't go into the facts of the case and I don't intend on going into the facts of this particular case but I think it is important to tell you what I would anticipate some of the evidence may be in this case and ask how it's going to affect you.
Now, testimony will be elicited, I think that the defendant some four days prior to her being interviewed by robbery detectives in this case was arrested by a uniformed police officer and that after this particular arrest and while being transported to the jail, she performed a sexual act on this officer in hopes of lenient treatment. I believe that is what the testimony is going to be. That has nothing to do with the armed robbery. What I want to know is this: Now, certainly, this action is abhorrent to me and all right  thinking people and can't be tolerated.
Defense counsel's objection, motion for mistrial, and the court's ruling were as follows:
MR. WILLIAMS: Your honor, I object to this dialogue by Mr. Greene. I believe its improper and I believe the phraseology as to the state of facts would be improper for the purpose of voir dire and, at this time, I would move it be stricken from the record and also move for a mistrial.
THE COURT: I will deny your motion for a mistrial and I would indicate that it is proper for voir dire because if it does come out, it will be important to know what feelings the jurors might have about it, both from the state's standpoint and the defendant's standpoint.
The prosecuting attorney continued:
Thank you. Now, what I want to know is this: if you believe that is true, ... I want to know whether or not you will be able to  I want to know one or two things: whether or not that fact, the fact that happened and you believe it did happen between this uniformed officer and this woman, would that  and the police officer, by the way, is not the victim of this robbery in any way, shape or form  would that fact so automatically affect you that you would be unable to return a verdict of guilty, even if you believe the defendant were guilty? Would you still be able to return a verdict of guilty if you believe the defendant was in fact guilty of armed robbery on the victim, Michele Zappone? ...
After receiving the assurance of each individual juror that they would be able to find the defendant guilty, the prosecuting attorney rephrased the question as follows:
In other words, and I will phrase it a different way: I represent the State of Florida. I work for the State of Florida. The police in Jacksonville work for Jacksonville. They are part of the Jacksonville Sheriff's Office. What I want to know in essence, I am asking you: would that act by that police officer so offend you that you'd take it out on the State of Florida and find her not guilty, even if you believe she was guilty? You wouldn't do that, would you?
During a side bar conference shortly after the above quoted statement, defense counsel renewed the motion for mistrial, stating:

*123 Your honor, at this time, I would ask for a mistrial. He's told them she's been arrested by uniformed police and has said that incident has nothing to do with the robbery charged before the issue has even been raised by the testimony and he's bringing in evidence of a collateral, unrelated crime and, at this time, I would move for a mistrial.
THE COURT: All right. The motion is denied.
At a sidebar conference which followed the above mentioned ruling, the prosecuting attorney made clear the state's position, which was that since defense counsel, prior to trial, had announced his intention to present evidence of the sexual assault in defense, and the court had denied the state's motion in limine to prohibit the use of such evidence, the state felt fully justified in addressing questions on the issue to the jury on voir dire. The trial court fully agreed with the state's position.
The voir dire examination continued, during which defense counsel also referred to the sex incident, but to a far lesser extent, and in less graphic detail than the prosecuting attorney. The prosecuting attorney repeatedly restated the facts and renewed the question, stressing from time to time that the arrest incident had nothing to do with the robbery, and that defendant's participation was in furtherance of her desire to receive favorable treatment through the assistance of the police officer. The sex episode easily became the feature of voir dire examination, the record of which consumed some 135 pages of the transcript, followed by the trial which contained only about 110 pages of testimony. The issue demonstrably engaged the interest of the jurors. Their attention was focused on little else, so far as the particulars of the case were concerned, during the entire jury selection process. Several jurors individually responded to questions concerning the incident, and some were excused because of their display of concern, one way or the other, as to how their view of the case might be affected.
The statements and questions by the prosecuting attorney were improper, prejudicial, and grounds for reversal. The rules governing questions on voir dire are stated in the early case of Dicks v. State, 83 Fla. 717, 93 So. 137 (1922), at 137:
Prospective jurors are examined on their voir dire for the purpose of ascertaining if they are qualified to serve, and it is not proper to propound hypothetical questions purporting to embody testimony that is intended to be submitted, covering all or any aspects of the case, for the purpose of ascertaining from the juror how he will vote on such a state of the testimony. Such questions are improper, regardless of whether or not they correctly epitomize the testimony intended to be introduced.
To propound to a juror a question purporting to contain an epitome of the testimony subsequently to be introduced, and ask whether he would acquit or convict upon such testimony, would have the effect of ascertaining his verdict in advance of his hearing the sworn testimony of the witnesses.
Such a procedure would revolutionize jury trials.
In Smith v. State, 253 So.2d 465 (Fla. 1st DCA 1971), this court held that neither counsel for the State nor the defendant should question prospective jurors as to the kind of verdict they would render under any given state of facts or circumstances, and the trial court should not permit such questioning. In that case objection was made to questioning by the state, of prospective jurors, whether the jurors would convict on the testimony of a person who has been granted immunity, if the state proved its case beyond a reasonable doubt.
The above stated principles, and our application of them in this case, are not altered by the holding of Pope v. State, 84 Fla. 428, 94 So. 865 (1922), that questions may be "so varied and elaborated as the circumstances surrounding the jurors under examination in relation to the case on trial would seem to require, in order to obtain a fair and impartial jury, whose minds are *124 free of all interest, bias or prejudice." These statements must be interpreted in the light of the paragraph of the opinion which immediately follows these quoted portions (opinion, 94 So. page 869):
Hypothetical questions having correct reference to the law of the case that aid in determining whether challenges for cause or peremptory are proper, may, in the sound and reasonable discretion of the trial court, be propounded to veniremen on voir dire examination. (emphasis supplied)
Here, statements by the prosecuting attorney that the defendant had been arrested on a charge unrelated to the robbery for which she was on trial, and reference to her commission of a sex act upon the arresting officer in hopes of receiving favorable treatment, cannot be argued as having "reference to the law of the case." In Pope v. State, supra, the court distinguished the Dicks case, supra, observing that even if such hypothetical questions on voir dire are not a good practice, "no right of the defendant was violated in propounding the question objected to," and "the question could not reasonably have harmed the defendant." Applying these tests, we are compelled to find that reference to the defendant's arrest on a collateral criminal charge, aggravated by further reference to her alleged meretricious conduct in engaging in a sex act with the arresting officer in return for promised favorable treatment, violated the fundamental rights of the defendant to a fair trial before an impartial jury. Harm to the defendant is apparent on this record. It was error to allow the state to proceed with this prosecution after the injection of these collateral issues into the trial, and the motion for mistrial should have been granted.
In our ruling on the foregoing issue we have not overlooked the possibility, even probability, that the evidence of the sexual assault would have been brought out, in any event, by the defense. Our first response is that whether the defendant testifies or not is a matter of choice for the defendant to make, and the state is not justified in injecting highly prejudicial and inflammatory collateral issues into the trial in anticipation of the defendant's testimony. The state may well have considered it advisable to "pull the fangs" by its own early mention of this incident, but it is not entitled to do so at the defendant's expense. Furthermore, appellant's version of the incident in question indicates that she was forced to commit the sex act while handcuffed to another female arrestee, who cried hysterically while the officer fondled her sexual organs. The voir dire statements by the prosecuting attorney, either by design or inadvertence, gave the impression that appellant was the instigator, rather than the unwilling victim of the affair.
Turning to a second issue, we find error in the trial court's ruling restricting defense counsel's cross-examination of Detective Geisenburg. Geisenburg was the state's principal investigating officer with respect to the crime. He interviewed appellant and obtained her signature to a purported confession which he had himself written. Geisenburg was present when appellant was brought to the interview room by Officer Miller, on January 20, 1978, at which time, according to appellant, she complained to the officers present about the sexual assault by Officer Strubbie, which occurred on January 16. Detective Geisenburg was also responsible for photographic identification shown to the robbery victim, as well as to the victim of a robbery that took place at Furchgott's on the same day. Appellant testified that her signing of the alleged confession was coerced under various threats and coercion, including that of being charged with both robberies.
The prosecuting attorney objected to defense counsel's question directed to Detective Geisenburg: "And do you know Officer Strubbie, sir?" The court sustained the objection. On proffer, Geisenburg indicated that he was aware of the fact that Officer Strubbie had been discharged from the department and was facing criminal charges based upon the incident with appellant. He denied knowing about the Strubbie incident at the time of his questioning of appellant *125 on January 20, in sharp conflict with appellant's later testimony that Geisenburg was angry and hostile on that occasion, and told her she was telling a "damn lie" about the Strubbie matter. The court denied defense counsel's proffer and restricted inquiry into this area. We find this to be error. Geisenburg's knowledge of and acquaintance with Officer Strubbie was a legitimate subject of inquiry by appellant's attorney, and he should have been allowed to fully explore the relationship. A defendant should be afforded wide latitude to demonstrate bias or a possible motive of the witness to testify as he has. Blair v. State, 371 So.2d 224 (Fla. 2nd DCA 1979). All witnesses are subject to cross-examination for the purpose of discrediting them by showing bias, prejudice or interest. Brown v. State, 362 So.2d 437 (Fla. 4th DCA 1978). In Lutherman v. State, 348 So.2d 624 (Fla. 3rd DCA 1977), it was held error to deny defense counsel's question of a police officer whether he was under investigation for police brutality. In Webb v. State, 336 So.2d 416 (Fla. 2nd DCA 1976), it was determined to be error for the court to refuse testimony by the defendant and another witness concerning a civil action brought by the defendant against the police chief and the city for false arrest. This testimony was relevant, the court found, as having an important bearing on the bias or prejudice of the witnesses against the defendant. The court stated (opinion, page 418):
We make no comment on the merits of appellant's defense, that he was "framed" by the police department because of his civil suit, but we hold that he was entitled to have that evidence presented to the jury.
This court, in Lombardi v. State, 358 So.2d 220 (Fla. 1st DCA 1978), reversed a conviction because of the court's refusal to allow the defendant to testify concerning a complaint he had filed against the sheriff's department in a civil suit, where one of the officers against whom the complaint was filed was also involved in the case for which he was under prosecution. Although there are factual differences distinguishing these cases from the one under consideration, we nevertheless find that the principles announced are applicable to show that restriction of cross-examination in this instance was error.
Another charge of prosecutorial overreaching involving the injection of other arrests into the trial of this case merits discussion. On cross-examination of appellant, the prosecuting attorney asked the question: "What were you arrested for on the 16th of January?" Appellant answered, "fraudulent use of a credit card." There was no objection at this point. However, shortly thereafter the prosecuting attorney again referred to a collateral arrest when he questioned the appellant: "Didn't you tell Lieutenant Williams that you told Officer Strubbie that you didn't want to go to the Duval County Jail because there was a capias for your arrest?" Immediately following her negative answer to this question, defense counsel moved for a mistrial based upon references to collateral crimes and arrests, unrelated to the charge of armed robbery. The trial court denied the motion. Following this, defense counsel's objection to a question concerning an unrelated robbery was sustained by the court. Notwithstanding this ruling, the prosecuting attorney continued the same line of questioning concerning unrelated robberies, forcing another objection, which was again sustained.
Appellant contends that references to the collateral crimes were prejudicial to the defendant. We find it unnecessary to determine whether defense counsel's single motion for mistrial was adequate to preserve the putative error for appeal. Compare, German v. State, 379 So.2d 1013 (Fla. 4th DCA 1980), Opinion filed February 13, 1980 [1980 FLW 302], since the case must be remanded for a new trial based upon the errors previously discussed infra. However, for the guidance of the trial court upon retrial, it is well to point out that we view the aforementioned line of questioning by the prosecutor as highly improper. Arrest, without more, does not, in law any more than in reason, impeach the integrity of a witness. Michaelson v. United States, 335 U.S. 469, *126 482, 69 S.Ct. 213, 222, 93 L.Ed. 168 (1948). It is permissible to interrogate witnesses only as to previous convictions, not mere former arrests or accusations of a crime. Jordan v. State, 107 Fla. 333, 144 So. 669, 670 (1932).
We have determined that the trial court did not err in admitting evidence of the pre-trial photographic identification, nor in the ruling allowing appellant's alleged confession to go to the jury for consideration. We have also found no error in admission of the "Williams Rule" testimony concerning the Furchgott's robbery, Williams v. State, 110 So.2d 654 (Fla. 1959), nor in the denial of a mistrial because of the prosecuting attorney's comments in closing argument relating to absence of witnesses available to appellant. In view of our determination that reversal on other grounds is required, we have found it unnecessary to consider the remaining points argued by appellant.
For the reasons stated, the judgment of conviction and sentence are hereby reversed, and the case is remanded for further proceedings consistent with this opinion.
McCORD, J., concurs.
BOOTH, J., dissents.