634 So.2d 1145 (1994)
Stuart Leslie POMERANZ, Appellant,
v.
STATE of Florida, Appellee.
No. 93-0794.
District Court of Appeal of Florida, Fourth District.
April 13, 1994.
*1146 Keith M. Krasnove of Keith M. Krasnove, P.A., Coral Springs, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Sharon A. Wood, Asst. Atty. Gen., West Palm Beach, for appellee.
FARMER, Judge.
This is still another case in which a trial judge has unreasonably limited cross examination of a key state witness, an alleged co-conspirator, regarding a separate murder prosecution against the witness and a motive therein to testify falsely. As we have previously explained in Taylor v. State, 623 So.2d 832 (Fla. 4th DCA 1993), and Auchmuty v. State, 594 So.2d 859 (Fla. 4th DCA 1992), a defendant is allowed wide latitude in these circumstances to show that the witness has colored his testimony to suit a plea agreement or other considerations from the state.
Here the judge abused his discretion in not allowing defense counsel to pursue a line of questioning designed to show that the witness faced capital murder charges for his participation in the separate crime which constituted a powerful incentive for this witness to adjust his testimony in this case. We are unable to find this error harmless, as we have no way of knowing what responses the questioning might have elicited; and, in any event, on the present record we cannot say that the state has shown it to be harmless beyond a reasonable doubt.
We also conclude that it was an abuse of discretion to limit the cross examination of the state's only eyewitness, the night manager of a fast food restaurant making a night deposit at a bank depository. Briefly stated, the proposed questions centered on a debt which the manager allegedly owed to a previous employer in a sum equal to the amount stolen, as a motive for the night manager to have himself stolen the money and fabricated the robbery as a cover for the crime.
While we agree with the state that it is possible that this line of questioning could quickly have gone astray, we nevertheless conclude that the trial judge erred in failing to allow any questions at all on the subject. As with the above, we cannot say that this error was harmless.
REVERSED FOR NEW TRIAL.
GUNTHER, J., concurs.
GLICKSTEIN, J., concurs specially with opinion.
GLICKSTEIN, Judge, concurring specially.
I agree with the majority's opinion.
It is often true that a prosecutor who relies upon a codefendant's testimony regrets doing so because the witness turns out to be a liability to the state. In Taylor v. State, 623 So.2d 832 (Fla. 4th DCA 1993), and in this case, the court has reversed trial courts that restricted cross-examination of codefendant witnesses when defense counsel was attempting to show to the jury why the codefendant's testimony was unworthy of belief because of bias.
*1147 Here, the trial for armed robbery involving appellant as a defendant and a codefendant witness apparently took place before the trial of appellant for murder in the first degree to which charge the codefendant pled. From the beginning  at voir dire  it was clear there was a reversal of roles; namely, a conflict between the trial court's concern that the jury here might learn that appellant was charged in a separate murder case and defense counsel's strategy that they learn about appellant's involvement in the murder charge up-front, so that he could establish the codefendant's bias in testifying against appellant.
[DEFENSE COUNSEL]: Judge, I've advised Mr. Pomeranz that in order to, in my opinion, properly represent him on this case, I would have to indicate to the jurors that he was also, might have also been accused of Mr. Patel's murder, and also during the course of the trial, that I intend to, when Mr. Kinser [the codefendant] comes, just congentally [sic] mention the fact that Mr. Kinser had accused my client about ten days before this incident of killing Mr. Patel while he dropped him off at the convenience store, and then he picked him up afterwards.
I explained to my client that normally the conventional thing is if you're accused of one crime, you don't want the jurors to know that you're charged with other crimes, and I've also indicated that my client, if he thought that I was doing a bad job, might in the future, would have a right for this matter, perhaps to make motion under 3.850, that he was represented by incompetent counsel, and, that therefore, he did not get a fair trial.
My client will indicate to Your Honor, when Your Honor questions him, that he understands what I'm doing, that he agrees with it, that he has confidence in me, and that insofar as these matters are concerned, that I just told Your Honor about, that is raising not  that doesn't mean it's carte blanche to bring up every possible crime that Mr. Pomeranz allegedly accused of, which I don't intend to do, but just as far as Mr. Patel's case, and this case, that he waives his rights to make a 3.850 motion for this matter, and he would indicate that in the questioning to Your Honor.
... .
THE COURT: Okay, let me solve this problem, because we want to move on with this voir dire, we're already well past an hour from when he wanted to start, but that's  you know, we have to do the things we need to do in order to assure both sides a fair trial.
During the voir dire, unless we do some individual voir diring of individual jurors, prospective jurors, I do not want, or will not permit the defendant to inquire about another offense, other than this robbery, unless that individual brings it up that you're inquiring of.
There's no reason during that time to get into what Mr. Kinser may, or may not, say. He's a prospective witness. Now, if Mr. Kinser, if he does ever become a witness in this case, before we get into those things that you're talking about, letting Mr. Pomeranz waive any objection for the sake of  or waiving any 3.850 rights, we'll proffer that as to what you get into because, obviously, you're going to want to ask that witness, you know, where are you now, I'm serving time for a particular offense.
So, what I am going to try to do is stay away from the offense of April the 22nd, with the limited possibility that Mr. Kinser, when he takes the stand, if he does, that we may have to deal with that issue then.
There is no need in getting into it in the voir dire except for the individual voir dire that we may do as to what they may, or may not, know about Mr. Pomeranz.
Having so restricted counsel on voir dire, the trial court extended the restriction to cross-examination of the codefendant witness.
If anything is to be learned by prosecutors in our district from this case and Taylor, 623 So.2d at 832, it is that if they choose to use a codefendant as a witness, they should expect a reversal if relevant questions affecting bias are not allowed.
As for the second point which compels reversal, I am at a loss to understand the *1148 trial court's remark that it was going to "stand rather narrowly on the Evidence Code" after defense counsel explained to the court its alternative theory of defense; namely, that the eyewitness took the money. Unfortunately, the trial court allowed itself to be led by the state into both needless, reversible errors in this case.