678 So.2d 895 (1996)
George C. LIVINGSTON, Appellant,
v.
STATE of Florida, Appellee.
No. 94-1052.
District Court of Appeal of Florida, Fourth District.
August 21, 1996.
*896 Evelyn A. Ziegler, West Palm Beach, for appellant.
Robert Butterworth, Attorney General, Tallahassee; and Aubin Wade Robinson, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, Judge.
Defendant George Livingston appeals his conviction of aggravated battery against victim Michael Piccone.
The state's theory of the case was that the crime grew out of defendant's obsession with Joni Martin. Defendant lived next door to Martin's townhouse. Martin testified that she twice observed defendant standing or sitting outside her property. He had once left a yellow sticky note on her gate. Another time, he asked Martin for jumper cables. Martin felt that defendant was interested in her, although she had done nothing to encourage him.
On November 19, 1992, the night of the incident, defendant appeared at Martin's door and asked to come in so they could get acquainted. Speaking through the closed door, Martin refused and said she was expecting male company. She believed that defendant then became agitated. About an hour later, Martin looked out her window and saw defendant sitting on a utility box in front of her gate. Feeling apprehensive, Martin called her friend Michael Piccone and asked him to come by and say something to defendant. She was not aware that Piccone had arrived until she heard him tell her to call the police. Piccone did not come into the house with Martin; he walked back to defendant. While she was on the phone with the police, Martin heard slaps. She went outside when the police arrived. Defendant was gone and Piccone was badly hurt.[1] Martin saw nothing of the altercation.
At trial, defendant and Piccone each blamed the other for the incident. Piccone characterized defendant as an unreasonable, excitable aggressor, who approached him in a threatening manner from the beginning and who attacked him without provocation. Defendant depicted Piccone as a jealous boyfriend who initiated the fight by rushing him, *897 fists up, with the words, "I am going to teach you a lesson." On cross examination, defendant admitted that he loved Martin, that he had left notes on her car, and that she had rebuffed him the times he had gone to her home the week before the battery.
An independent witness, Pedro Romero, corroborated Piccone's version of the facts. Romero saw the two men arguing. He heard Piccone trying to calm defendant down and get him to return to his apartment. According to Romero, Piccone asked, "Why don't we just talk this out?" and as he started to walk away defendant pushed him and called him a "m___f___ wimp." Romero heard Piccone yell, "Call the police!" Romero then went into his girlfriend's apartment for five minutes. When he went back outside, Romero saw defendant punching Piccone, who was not fighting back.
Defense counsel sought to impeach Romero by establishing that in November 1992, when he first gave a statement to the police, Romero was facing felony charges which were resolved a month later by a sentence of probation with adjudication of guilt withheld. The prosecutor objected that such impeachment was improper under section 90.610, Florida Statutes (1995), since adjudication had been withheld. The trial court refused to allow any cross examination into these matters.
Defendant first claims that the trial court erred by allowing the state to present evidence that defendant left notes on Martin's car and attempted to speak with her several times prior to the night of the incident. Classifying this as evidence of "stalking," defendant argues that its admission violated section 90.404(2), Florida Statutes (1995). Setting aside the "stalking" label as legal hyperbole, we hold that the evidence of defendant's prior contacts with Martin was admissible under section 90.402 as being relevant to and inseparable from the battery. It was "necessary to admit the evidence to adequately describe the deed." Tumulty v. State, 489 So.2d 150, 153 (Fla. 4th DCA), review denied, 496 So.2d 144 (Fla.1986) (quoting Ehrhardt, Florida Evidence, § 404.16 at 138 (2d ed.1984)). Evidence of defendant's prior encounters with Martin place the incident in the context of his feelings for her and explain the strong emotions which may have ignited the battery.
Defendant next argues that the trial court improperly restricted his cross examination of witness Romero concerning his prior criminal charges. The state concedes error, but argues that it was harmless. We hold that the limitation on the cross examination of this important state witness was reversible error.
The proposed cross examination of Romero was proper not under section 90.610 cited by the state at trial, but as evidence of bias or interest pursuant to section 90.608(2), Florida Statutes (1995). All witnesses are subject to cross examination for the purpose of discrediting them by showing bias, prejudice or interest. Cox v. State, 441 So.2d 1169 (Fla. 4th DCA 1983). Because liberty is at risk in a criminal case, a defendant is afforded wide latitude to develop the motive behind a witness' testimony, "to show that the witness has colored his testimony to suit a plea agreement or other considerations from the state." Pomeranz v. State, 634 So.2d 1145, 1146 (Fla. 4th DCA 1994); Harmon v. State, 394 So.2d 121, 123 (Fla. 1st DCA 1980). Obviously, a defendant has a strong interest in discrediting a crucial state witness by showing bias, an interest in the outcome, or a possible ulterior motive for his in-court testimony. Phillips v. State, 572 So.2d 16 (Fla. 4th DCA 1990). A well recognized area of cross examination is how pending criminal charges may have influenced a witness' cooperation with the state and the content of in-court statements. Blanco v. State, 353 So.2d 602, 604 (Fla. 3d DCA 1977); Garey v. State, 432 So.2d 796, 797 (Fla. 4th DCA 1983). To explore even more subtle motivations, where a witness has already been sentenced, a defendant may cross examine concerning any continuing relationship between the witness and the state. For example, in Watts v. State, 450 So.2d 265, 268 (Fla. 2d DCA 1984), the second district held that a key state witness on probation may properly be questioned about whether he "has a desire to testify so as to please the authorities who *898 have some discretion over his probationary status."
Romero was facing felony charges in 1992 when he first gave a statement to the police. A month later, he plea bargained for a favorable resultprobation and adjudication withheld. The trial court should have permitted cross examination of Romero on the connection, if any, between the disposition of his criminal case and his statement and testimony in this case. Because Romero was the only objective eyewitness to the beating, we cannot say beyond a reasonable doubt that this error did not contribute to the verdict. State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
Finally, the state improperly rehabilitated Romero by establishing that his November, 1992 statement to the police was consistent with his in-court testimony. The contents of the prior statement were hearsay, subject to none of the exceptions contained within section 90.801(2)(b), Florida Statutes (1995).
REVERSED AND REMANDED.
KLEIN and PARIENTE, JJ., concur.
NOTES
[1] At the hospital, Piccone was diagnosed with a fractured cheek and nose and a crushed septum. He sustained three wounds which required stitches.