805 So.2d 120 (2002)
David BAROWS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-1769.
District Court of Appeal of Florida, Fourth District.
January 23, 2002.
*121 Carey Haughwout, Public Defender, and Susan D. Cline, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Donna L. Eng, Assistant Attorney General, West Palm Beach, for appellee.
STONE, J.
Barows was convicted and sentenced for robbery. He asserts an abuse of discretion by the trial court in restricting defense counsel's cross-examination of the victim/witness as to bias.
Barows was charged with home robbery. The victim, King, testified that upon returning home after making a round of strip clubs in Miami and Broward County, a hooded individual, later identified as Barows, approached him with a gun. When King tried to run, the assailant struck him over the head and, together with a second individual, took him into his house.
Once inside the house, King was taken to his bedroom. King testified that Barows removed jewelry and other belongings *122 from his dresser. The two assailants also took approximately $122,000 from a safe. After the robbery, King watched the two individuals flee in a Ford Explorer. King followed the Explorer until he saw Deputy Higgins. Higgins then joined King in the pursuit. When the two caught up with the Explorer, King immediately recognized the driver of the vehicle as his friend, Latrice Frazier. He recognized the other two individuals, Samuel Thomas and the appellant, Barows, as the ones who robbed him.
During a search of the Explorer, a blue ski cap, a .45 caliber semi-automatic handgun, a pair of handcuffs, and a paper bag containing approximately $122,000 was found inside. In addition, they found approximately $8,236 and some jewelry on Barows. Barows, however, denied any involvement in the robbery.
The source of the money was an issue at trial. Evidence indicated that King was involved in gambling activities out of his home and was also possibly involved in narcotics activities. In particular, after the robbery, King was taken to the Fort Lauderdale police station to make a statement. Prior to making the recorded statement, he told the investigating detectives that the $122,000 was money he had made from gambling. However, during the recorded statement, he never mentioned, nor was he asked about, the gambling activities. Detective McGowan testified that he did not consider the gambling activities relevant to the robbery investigation. Nevertheless, focus of the trial involved King and his activities.
Prior to trial, the state made a motion in limine to exclude evidence regarding King's three prior drug convictions. The court granted the motion and allowed King to be questioned only as to the existence and number of his prior felony convictions. At trial, King denied being a drug dealer but acknowledged that he had been accused of being a drug dealer.
The court also ruled, in limine, that the fact that police were alerted to the bag of money in the Explorer by the reaction of a K-9 narcotics dog was not relevant. During trial, and outside the presence of the jury, it was proffered that the dog had alerted officers to the bag, indicating the possibility that there were trace amounts of narcotics on the money in the bag. The court again ruled that the testimony would not be allowed in because it was not relevant to the issue of whether Barows participated in the robbery.
The state also moved, in limine, that no evidence be allowed as to the threat of a forfeiture action being brought over the money. Barows' principle defense was that King was not a credible witness. Defense counsel argued that evidence of an impending forfeiture was relevant in that King would have a motive to lie if he was worried about a potential forfeiture of the $122,000. The trial court granted the motion, ruling that the forfeiture action was a civil matter unrelated to the case.
We conclude that it was an abuse of discretion not to allow the defense to question King over any concern regarding a possible forfeiture of his money, where such evidence was relevant to show bias or motive to lie.
Section 90.608(2), Florida Statutes, as well as the Sixth Amendment to the United States Constitution, guarantee a defendant "the right to a full and fair opportunity to cross-examine prosecution witnesses in order to show their bias or motive to be untruthful." See Chadwick v. State, 680 So.2d 567, 568 (Fla. 1st DCA 1996) (citations omitted). Patently, "[a] defendant has a strong interest in discrediting a crucial state's witness by showing bias, an interest in the outcome, or a possible *123 ulterior motive for his in-court testimony." Auchmuty v. State, 594 So.2d 859, 860 (Fla. 4th DCA 1992); see Jones v. State, 577 So.2d 606, 608 (Fla. 4th DCA 1991). Furthermore, "[b]ecause liberty is at risk in a criminal case, a defendant is afforded wide latitude to develop the motive behind a witness' testimony." Green v. State, 691 So.2d 49, 50 (Fla. 4th DCA 1997) (citations omitted). Courts should even allow inquiries "that might at first blush appear to be lacking any basis at all thus far in the trial, so long as counsel states a basis tending ultimately to show such bias." Purcell v. State, 735 So.2d 579, 581 (Fla. 4th DCA 1999).
The witness' interest in pending litigation arising out of the incident are proper areas for impeachment on cross-examination to show a witness' possible bias or motive to be untruthful. See Livingston v. State, 678 So.2d 895 (Fla. 4th DCA 1996); Cox v. State, 441 So.2d 1169 (Fla. 4th DCA 1983).
Here, Barows should have been given the opportunity to question King about the possibility of a forfeiture because the avoidance of such a loss is certainly a motive to testify untruthfully. Although no forfeiture had yet been filed, the record indicated that a forfeiture action was being considered by the sheriff's office. Although the state correctly notes that the forfeiture action is not relevant to the issue of robbery, it is relevant to bias or motive to lie. See Purcell, 735 So.2d at 580 (holding that trial court erred in refusing to allow defense counsel to impeach prosecution witness by showing bias).
We recognize that Barows was given the opportunity to conduct an effective cross-examination of King which exposed other areas of impeachment. King was questioned extensively about the rather extravagant lifestyle he was able to afford and about the extensive gambling operation he conducted in a building behind his home. He was questioned about his nightly visits to strip clubs in the area and defense counsel asked King directly whether he had been a drug dealer. We also recognize that counsel was allowed to question King about the money, the fact that the police were still holding it, and whether he knew if or when his money would be returned to him. However, applying the mandate of Goodwin v. State, 751 So.2d 537 (Fla.1999), we cannot say that the error was harmless beyond a reasonable doubt.
We, therefore, reverse and remand for new trial.
FARMER and HAZOURI, JJ., concur.