862 So.2d 908 (2003)
Calvin Dexter MITCHELL, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-4011.
District Court of Appeal of Florida, Fourth District.
December 24, 2003.
*910 Carey Haughwout, Public Defender, and Dea Abramschmitt, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, and Joseph J. Tringali, Assistant Attorney General, West Palm Beach, for appellee.
KRATHEN, DAVID H., Associate Judge.
Mitchell was found guilty of trespass of a structure and battery for events that occurred on April 3, 2001. At around 2:00 a.m., appellant and his girlfriend, Michele Robinson, were having a quarrel, which she attempted to bring to an end by running away. Appellant chased her up to a neighbor's home, where Robinson knocked on the door to seek refuge. The neighbor, Pollack, opened the door and let Robinson enter.
One version of the facts is that despite Pollack's best efforts in attempting to shut the door with Mitchell on the outside, appellant forced his way into the home where a continuation of the dispute ensued. Awakened by the ruckus, Pollack's boyfriend, Shimer, urged Pollack to call 911. Either Robinson or Pollack, or both, were struck by Mitchell, who thereafter fled. The defense version of the events is that, although there was an argument between Robinson and Mitchell, when Robinson entered Pollack's home Mitchell stayed outside, there were no further altercations, and no one was struck.
In this appeal, Mitchell raises two issues. He first claims that the trial court denied him the right to an impartial jury by denying cause challenges to three jurors *911 who expressed misgivings about being impartial if Mitchell elected not to take the stand and testify on his own behalf. Mitchell also argues that the court erred by refusing to permit the exploration on cross-examination of Shimer's alleged bias towards appellant and his motive to lie. On proffer, defense counsel sought to introduce evidence that Shimer disapproved of Robinson dating Mitchell, because he was a black man, and that once the witness declared that to be untrue, he would call a rebuttal witness to dispute what appears in some respects to be a collateral issue.
During jury selection, Juror Weldon testified that although she knew that the defendant had a right not to testify, it "probably" would cross her mind if he did not. Juror Sheehan testified that he would "wonder why they didn't get up there and tell their story." Although the judge gave an instruction that defendant had an absolute right to not testify, the juror stated that this did not change his feelings. When given the opportunity to comment on this subject, Juror Zimmer explained that she would probably question why someone who was not guilty "wouldn't want to perhaps tell their side of the story." On the heels of Zimmer's remarks, Juror Fantini added "[s]he expressed my sentiments exactly."
Defense counsel challenged for cause all of the jurors who expressed doubt as to whether they could be fair if the defendant did not testify. The court denied the motion as to jurors Sheehan, Weldon, and Fantini. Defense used peremptory challenges on those three jurors, and then requested an additional peremptory to remove juror Pasquale. The request was denied and the jury was sworn.
The standard for reviewing a trial judge's decision on a challenge for cause is abuse of discretion. Castro v. State, 644 So.2d 987, 990 (Fla.1994); see also Carratelli v. State, 832 So.2d 850, 854 (Fla. 4th DCA 2002), review denied, 848 So.2d 1153 (Fla.2003). Our review of the record indicates that the trial judge abused his discretion in denying cause challenges to two of these jurors.
Trial judges must settle the query as to "whether the juror can lay aside any bias or prejudice and render his [or her] verdict solely upon the evidence presented and the instructions on the law given to him [or her] by the court." Lusk v. State, 446 So.2d 1038, 1041 (Fla.1984). "When making this determination, the court must acknowledge that a `juror's subsequent statements that he or she could be fair should not necessarily control the decision to excuse a juror for cause, when the juror has expressed genuine reservations about his or her preconceived opinions or attitudes.'" Rodas v. State, 821 So.2d 1150, 1153 (Fla. 4th DCA 2002), review denied, 839 So.2d 700 (Fla.2003). "Because impartiality of the finders of fact is an absolute prerequisite to our system of justice, we have adhered to the proposition that close cases involving challenges to the impartiality of potential jurors should be resolved in favor of excusing the juror rather than leaving doubt as to impartiality." Williams v. State, 638 So.2d 976, 979 (Fla. 4th DCA 1994), review denied, 654 So.2d 920 (Fla.1995).
Here, the responses of prospective juror Sheehan reflected doubt about his ability to set aside his conjecture as to why the defendant did not testify, and that despite the instructions from the trial judge, his feelings did not change. This juror should have been struck for cause. See Overton v. State, 801 So.2d 877 (Fla.2001). Juror Fantini fell in together with Juror Zimmer when she voiced her opinion that she would inquire why someone innocently charged with a crime would not want to testify. All of these comments create *912 more than a reasonable doubt about these jurors' ability to be fair and impartial, and, therefore, the court erred in denying Mitchell's challenge for cause as to these prospective jurors.
The second point on appeal pertains to whether the trial court denied Mitchell his right of cross-examination of Shimer by prohibiting inquiry regarding a potential bias toward black men dating Robinson. Shimer's testimony was critical. For the State, it supported what was asserted to be the unbiased testimony of Pollack who had little if any relationship with Robinson or the appellant.
Section 90.608(2), Florida Statutes, as well as the Sixth Amendment to the United States Constitution, guarantee a defendant "the right to a full and fair opportunity to cross-examine prosecution witnesses in order to show their bias or motive to be untruthful." See Chadwick v. State, 680 So.2d 567, 568 (Fla. 1st DCA 1996). Patently, "[a] defendant has a strong interest in discrediting a crucial state's witness by showing bias, an interest in the outcome, or a possible ulterior motive for his in-court testimony." Auchmuty v. State, 594 So.2d 859, 860 (Fla. 4th DCA 1992); see also Jones v. State, 577 So.2d 606, 608 (Fla. 4th DCA 1991). Furthermore, "[b]ecause liberty is at risk in a criminal case, a defendant is afforded wide latitude to develop the motive behind a witness' testimony." Green v. State, 691 So.2d 49, 50 (Fla. 4th DCA 1997) (quoting Livingston v. State, 678 So.2d 895, 897 (Fla. 4th DCA 1996)). Courts should even allow inquiries "that might at first blush appear to be lacking any basis at all thus far in the trial, so long as counsel states a basis tending ultimately to show such bias." Purcell v. State, 735 So.2d 579, 581 (Fla. 4th DCA 1999); see also Barows v. State, 805 So.2d 120, 123 (Fla. 4th DCA 2002).
Pollack explained that, upon entering, Mitchell ran toward Robinson, pushed her a couple of times and continued yelling. As she began to speak to the 911 dispatcher, Pollack said Mitchell walked up to her, slapped her, and attempted unsuccessfully to wrestle the phone away from her. Pollack identified Mitchell's voice as one of those which was heard on the tape. Shimer awoke somewhat dazed, and described the scene as "pandemonium." Shimer said he told Pollack to call the police, that Mitchell became very upset, took the phone out of Pollack's hand, and threw it to the floor. He then observed Mitchell push Robinson across the living room and hit her in the face.
Robinson told the jury that she and Mitchell got into a fight over money. The argument got out of control, and to stop it, she went inside Pollack's apartment. The recollections of the witnesses take a distinctly different path from this point forward. Robinson said that when she went into Pollack's apartment, Mitchell remained outside, that Mitchell never became physical and that he never laid a hand on Pollack.
Where, as here, the credibility of the defendant and the alleged victim, on the one hand, and one of the State's chief witnesses, on the other, were crucial to the case, any evidence tending to prove a motive to lie by the State's witness is both relevant and admissible. See Barows, 805 So.2d at 122-23. It was important to the State's evidence that Shimer's testimony support Pollack's. If there is any doubt that the witness may have a bias capable of crafting a scenario out of thin air, then the defendant should have a right to explore that bias before the jury. Although whether or not Shimer approved of Robinson's relationship with Mitchell is not relevant to the crime charged, it may very well *913 be relevant to the issue of his bias towards Mitchell and any motivation he may have had to concoct his testimony. See, e.g., Smith v. State, 679 So.2d 30 (Fla. 4th DCA 1996) (holding that it was error not to allow juvenile to present testimony concerning alleged prejudice and bias of two of the State's key witnesses. The error was not harmless because it "went to possible motive the witnesses may have had to exaggerate or even completely fabricate their testimony"); see also Davis v. State, 527 So.2d 962 (Fla. 5th DCA 1988) ("[C]onsidering the critical importance of the daughter's credibility in this case, we cannot conclude, beyond a reasonable doubt, that this error was harmless.").
The State contends that the manner in which defense counsel wished to question Shimer was inappropriate, in that, after Shimer denied that he expressed disapproval to Robinson of her relationship with Mitchell, counsel planned to recall Robinson to impeach Shimer's testimony. The rule on collateral impeachment is stated as follows:
When a witness is testifying on cross-examination, any answer to a non-material collateral matter is conclusive and cannot be impeached by normal means of impeachment, including contradictory testimony by another witness. The test is whether the proposed testimony can be admitted into evidence for any purpose independent of the contradictions. There are two types of evidence that pass this test: (1) facts relevant to a particular issue; and (2) facts which discredit a witness by pointing out the witness' bias, corruption, or lack of competency.
Dupont v. State, 556 So.2d 457, 458 (Fla. 4th DCA 1990). If the events play out as counsel for Mitchell outlined, although the colloquy with Shimer may be collateral, the facts that may be introduced by Robinson thereafter may tend to discredit the witness by pointing out a possible bias. Accordingly, on any retrial Mitchell should be reasonably allowed to demonstrate his contention that the witness is biased.
REVERSED AND REMANDED FOR A NEW TRIAL.
FARMER, C.J., and GUNTHER, J., concur.