# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2023-2303
Lower Tribunal No. CF-22-007565-XX

_____

BRIANNE MIDDLEBROOK,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

Appeal from the Circuit Court for Polk County.
Catherine L. Combee, Judge.

March 7, 2025

MIZE, J.

Appellant, Brianne Middlebrook ("Defendant"), appeals her judgment and sentence for robbery with a firearm and armed burglary of a conveyance. Defendant argues that the trial court erred when it precluded Defendant from cross-examining the alleged victim about a report that Defendant made to the police concerning the alleged victim prior to the date that Defendant allegedly committed the crimes at issue in this case. Defendant contends that this cross-examination was relevant to show the alleged victim's bias against Defendant and his motive to lie in his

testimony. We agree the trial court erred by precluding this cross-examination and we do not find the error to be harmless. Accordingly, we reverse Defendant's judgment and sentence and remand this case for a new trial.

## Background and Procedural History

The State filed a two-count Information charging Defendant with robbery with a firearm and armed burglary of a conveyance. The Information alleged that Defendant used a firearm to rob Ricky Marks ("Marks") of his cell phone and that Defendant burglarized Marks's truck while armed with a handgun. At trial, Defendant's theory of defense was that Marks fabricated the crimes in retaliation for Defendant reporting Marks to the police for possession of child pornography.

Marks was the State's principal trial witness to establish the facts of the alleged crimes. He testified that he and Defendant were roommates from February 2022 through September 2022. They were also close friends and were sexually intimate multiple times. Defendant's grown son, Braden, also lived with Defendant and Marks. During the time that Marks and Defendant lived together, Marks owned a motorcycle and a pickup truck. Six days before the date of the alleged criminal incident in this case, Defendant took Marks's motorcycle out of the storage unit where he kept it. Defendant told Marks by text message that she took the motorcycle to prevent Braden from gaining access to it. Marks did not give Defendant permission to take the motorcycle.

2

Marks texted Defendant asking for his motorcycle to be returned. Defendant and Marks agreed to meet on a Saturday at a Bob Evans restaurant in New Port Richey, Florida for Defendant to return the motorcycle. Marks agreed that Defendant could take his pickup truck at the same time. When it ended up raining that Saturday, Defendant and Marks agreed to delay the exchange until Sunday morning and to meet at the same Bob Evans. While Marks went to the Bob Evans at the agreed upon time, Defendant did not show up. Marks texted Defendant, and Defendant told him that she was caught up in Lakeland and asked if they could meet somewhere closer to her later in the day. Marks agreed, and Defendant told Marks that she would meet him in the parking garage of the Hard Rock Café in Tampa at noon. While Marks arrived at the Hard Rock Café parking garage as agreed, Defendant again did not show up. Marks texted Defendant again, and Defendant asked him to come to Lakeland. Marks drove to Lakeland, and then he both called and texted Defendant to try to arrange a location for them to meet. Eventually, Defendant told Marks to pick a sandwich shop, which he did, and he told Defendant that he would meet her at the sandwich shop momentarily.

The sandwich shop was in a strip mall that had a single, joint parking lot for all of the businesses in the strip mall. When Marks arrived, he parked in a parking spot by backing into the spot. Marks then texted Defendant, "I'm here." After an exchange of text messages between the two, Defendant eventually arrived. Despite

there being multiple parking spaces available nearby, Defendant pulled the motorcycle in front of Marks's truck, thereby blocking him in his parking spot such that he could not pull out of the spot without hitting the motorcycle. After parking in front of Marks's truck, Defendant did not get off the motorcycle. Defendant remained on the motorcycle and Marks walked over to her and they made small talk for five to ten minutes.

While Defendant and Marks were talking, a sedan pulled into the parking lot at a high rate of speed. Inside the car were Braden and two other men that Marks did not recognize. The sedan stopped and all three men got out of the car and approached Marks. Braden walked up to Marks and said, "This is not how it's going to go down. You're not going to get your motorcycle. You're not getting a truck. We're going to go for a ride." Marks responded, "No, we are not." The two of them then "got into a scuffle." The other two men left and walked back to the sedan in which they had arrived.

The scuffle lasted a few minutes. After the scuffle, Braden started walking back to the car in which he had arrived. Marks took the opportunity to attempt to get back into his truck and leave the scene. Marks ran to his truck, got in the driver's seat and attempted to lock the door. Braden then jumped into the passenger's seat, pulled out a gun and put it to the right side of Marks's head and said, "We're going to do this. We're going to go for a ride now." Marks responded by swinging his

4

motorcycle helmet towards Braden's head. While this was happening, Marks heard Defendant say, "It wasn't supposed to go down like this." Marks jumped out of the truck and ran to a nearby road into oncoming traffic to try to get someone's attention. After Marks exited the truck, Braden also exited the truck and jumped on the back of the motorcycle. Defendant and Braden then drove away on the motorcycle.

After seeing Defendant and Braden drive away, Marks returned to his truck and noticed that Braden had taken his cell phone from the truck when Braden exited it. Since Marks did not have his phone, he ran to a nearby convenience store and called 911.

Marks's testimony was the State's primary evidence to establish the foregoing facts. During defense counsel's cross-examination of Marks, defense counsel proffered testimony outside of the presence of the jury in order to obtain a ruling from the trial judge as to whether defense counsel could elicit the testimony in front of the jury. The proffered testimony, some from Marks and some from Defendant, established that approximately a week before the alleged armed robbery and armed burglary took place, Defendant had reported to the police that Marks was in possession of child pornography.

According to Defendant, while she and Marks were living together, Defendant became aware that Marks possessed child pornography on his computer. Defendant was initially afraid to take any action, but she did advise Braden about it because

5

Braden had a young daughter, who was three or four years old at the time. One day, Defendant went to the store and came back to the house to find that Braden had fallen asleep, and Marks had locked himself in his bedroom with the young child. When Marks would not open the door, Defendant called the police. By the time the police arrived, Braden had gotten into the bedroom and there was a fight between Braden and Marks that resulted in Marks visiting a hospital. Despite this incident, Defendant continued living at the house because she had nowhere else to go.

According to Marks, the police took his computer and conducted an investigation. Marks invoked his privilege against self-incrimination with regard to his computer and what was stored on it. However, he testified that the police had completed their investigation of him by the time of Defendant's trial below and that he had not been charged with any crime.

After the foregoing testimony was proffered, defense counsel informed the trial court that he wanted to question Marks regarding this incident in front of the jury "to show that he has a motive to try to lie about her in this case." Defense counsel stated further:

> I don't plan on getting into the child pornography, but I would ask if I could ask if he has some motive to be angry with my client. And if he says no, then that would allow me to go into the fact that she reported him to the police.

The State argued, in response, that the fact that Defendant reported to the police that Marks possessed child pornography was irrelevant to whether Defendant

committed a robbery and burglary at the date and location alleged by the State. The State also argued that the probative value of this testimony was "heavily outweighed by the prejudicial effect of . . . unsupported allegations of the types of crimes that tend to cause emotional reactions, possession of child pornography, when the apparent testimony before the Court is none of that is pending, and as far as I know, no evidence will be adduced regarding that."

After hearing the arguments from defense counsel and the State, the trial court ruled that defense counsel would not be permitted to present this testimony to the jury. The trial court found that the testimony would be more prejudicial than probative. As part of its reasoning, the trial court also stated that Marks had already testified to the jury that he was upset with Defendant because she failed to show up at multiple agreed upon times and locations for Marks to retrieve his motorcycle.

In his closing argument, defense counsel argued to the jury that Marks lied during his testimony and that the entire robbery and burglary that Marks described never happened. The jury apparently believed Marks as they returned a verdict of guilty as charged. This appeal followed.

## Analysis

### I.    The Sixth Amendment Right to Cross-Examine a State's Witness for Bias

"The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against

him.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (quoting Amend. VI, U.S. Const.). "This right to confrontation is applicable to the states though the Fourteenth Amendment." *Conner v. State*, 748 So. 2d 950, 954 (Fla. 1999) (citing *Idaho v. Wright*, 497 U.S. 805, 813 (1990)).[1]

"The right of confrontation . . . means more than being allowed to confront the witness physically." *Van Arsdall*, 475 U.S. at 678 (quoting *Davis v. Alaska*, 415 U.S. 308, 315 (1974) (internal quotations omitted)). "Indeed, the main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Van Arsdall*, 475 U.S. at 678 (quoting *Davis*, 415 U.S. at 316 (internal quotations omitted)). The United States Supreme Court has "recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."[2] *Van Arsdall*, 475 U.S. at 678-79 (quoting *Davis*, 415 U.S. at 316-17); *see also Gibson v. State*, 661 So. 2d 288, 291 (Fla. 1995) ("We further recognize that a defendant's right to cross-examine witnesses is secured by the Sixth Amendment to the United States

---

[1] In Florida, a criminal defendant's right to cross-examine witnesses is also secured by Article 1, Section 16(a) of the Florida Constitution. However, Defendant did not raise in her Initial Brief any argument under the Florida Constitution.

[2] A number of the judicial opinions quoted in this opinion use "witness'" as the singular possessive form of "witness". This opinion uses "witness's" as the singular possessive form of "witness". The Chicago Manual of Style ¶¶ 7.16, 7.22 (18th ed. 2024). The quotations from other judicial opinions have not been corrected but, when not quoting from another opinion, this opinion uses "witness's" as the singular possessive form of "witness".

8

Constitution . . . . Inherent within this right is a defendant's right to expose a witness's motivation in testifying."). Thus, "[t]he sixth amendment right to confrontation of witnesses requires that a defendant in a state criminal case be allowed to impeach the credibility of a prosecution witness by cross-examination to show bias." *Hannah v. State*, 432 So. 2d 631, 632 (Fla. 3d DCA 1983); *see also Rivera v. State*, 274 So. 3d 537, 540 (Fla. 5th DCA 2019) ("The Sixth Amendment guarantees the right of an accused to attack a witness' credibility by means of cross-examination directed toward revealing possible biases or ulterior motives of the witness as they may relate to the case at hand." (quoting *Henry v. State*, 123 So. 3d 1167, 1169-70 (Fla. 4th DCA 2013) (internal quotations omitted))); *Tomengo v. State*, 864 So. 2d 525, 530 (Fla. 5th DCA 2004) ("A defendant, as a matter of right, may cross-examine a State witness with respect to his motive, interest, or animus, which is connected to the cause or to the parties to the cause."). "The vital importance of full and searching cross-examination is even clearer when . . . the prosecution's case stands or falls on the jury's assessment of the credibility of the key witness." *Rivera*, 274 So. 3d at 540-41 (quoting *Henry*, 123 So. 3d at 1170 (internal alterations omitted)); *see also Wooten v. State*, 464 So. 2d 640, 641 (Fla. 3d DCA 1985); *Hannah*, 432 So. 2d at 631 ("All witnesses are subject to cross-examination for the purpose of discrediting them by showing bias, prejudice or interest, and this is particularly so where a key witness is being cross-examined.");

9

*Tomengo*, 864 So. 2d at 530 ("The right to a full cross-examination is especially necessary when the witness being cross-examined is the key witness on whose credibility the State's case relies."). "Under such circumstances, obviously, a defendant has a strong interest in discrediting a crucial state witness by showing bias, an interest in the outcome, or a possible ulterior motive for his in-court testimony." *Rivera*, 274 So. 3d at 541 (quoting *Henry*, 123 So. 3d at 1170 (internal quotations, alterations omitted)).

Because the Confrontation Clause protects the right of a criminal defendant to cross-examine a State witness to show that the witness is biased, "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness." *Van Arsdall*, 475 U.S. at 680 (quoting *Davis*, 415 U.S. at 318 (internal quotations, alterations omitted)). While a trial court generally has "broad discretion to impose reasonable limits on cross-examination when it is concerned about, among other things, harassment, prejudice, confusion of the issues, the witness safety, or interrogation that is repetitive or only marginally relevant, the court's discretion is constrained by a criminal defendant's Sixth Amendment rights." *Rivera*, 274 So. 3d at 540 (internal quotations, alterations and citations omitted).

"The trial court does not have the discretion to exclude questions which touch upon interest, motive, or animus." *Tomengo*, 864 So. 2d at 530-31; *see also Purcell v. State*, 735 So. 2d 579, 580-81 (Fla. 4th DCA 1999) ("Questions touching interest, motives, animus, or the status of witnesses to the suit, or parties to it are not collateral or immaterial. As to such matters inquiry may be had, and it is not within the discretion of the court to exclude it." (quoting *Alford v. State*, 36 So. 436, 438 (Fla. 1904)).

The Florida Evidence Code implements the Sixth Amendment right of a criminal defendant to cross-examine a State witness for bias. Indeed, it sweeps more broadly and protects the rights of parties in both criminal and civil proceedings to examine or cross-examine any witness to show that the witness is biased. *See Gibson*, 661 So. 2d at 291 ("Our evidence code liberally permits the introduction of evidence to show the bias or motive of a witness."). Specifically, Section 90.608(2), Florida Statutes (2022), provides that "[a]ny party, including the party calling the witness, may attack the credibility of a witness by . . . [s]howing that the witness is biased." Section 90.612(2), Florida Statutes (2022), likewise provides that "[c]ross-examination of a witness is limited to the subject matter of the direct examination *and matters affecting the credibility of the witness*." (emphasis added).

11

Thus, under the Florida Evidence Code, the Florida Constitution,[3] and the United States Constitution, evidence of a State witness's bias against a criminal defendant is always relevant and a proper subject of cross-examination. *McDuffie v. State*, 341 So. 2d 840, 841 (Fla. 2d DCA 1977) ("Bias or prejudice of a witness has an important bearing on his credibility and evidence showing such bias is relevant. . . . It is proper to elicit facts tending to show bias or prejudice of a witness in cross-examination of that witness."); *Peret v. State*, 301 So. 3d 437, 439 (Fla. 2d DCA 2020) ("[B]ias or prejudice of a witness has an important bearing on his credibility, and evidence tending to show such bias is relevant." (quoting *Lloyd v. State*, 909 So. 2d 580, 581 (Fla. 2d DCA 2005)); *Webb v. State*, 336 So. 2d 416, 418 (Fla. 2d DCA 1976) ("Bias or prejudice of a witness has an important bearing on his credibility, and evidence tending to show such bias is relevant.").

Moreover, it is not just the fact of bias itself or the general idea of bias that is relevant and a proper subject of cross-examination. Rather, a criminal defendant is entitled to cross-examine a State witness regarding the specific facts which might cause the witness to be biased against the defendant. *Davis*, 415 U.S. at 318 ("While counsel was permitted to ask [the State witness] whether he was biased, counsel was unable to make a record from which to argue why [the State witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at

---

[3] *See* note 1, *supra*.

12

trial. . . . [D]efense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness."). This includes matters that are not otherwise related to the crime charged and that were not the subject of the State's direct examination of the witness. *McDuffie*, 341 So. 2d at 841 ("It is a fundamental principle that matters tending to show bias or prejudice in a criminal prosecution may be inquired about even when they were not mentioned in direct examination."); *Baucham v. State*, 881 So. 2d 95, 96 (Fla. 1st DCA 2004) ("[A] witness may be impeached by testimony tending to prove bias, even if the testimony concerns facts not otherwise germane."); *Mitchell v. State*, 862 So. 2d 908, 912-13 (Fla. 4th DCA 2003) (holding that an issue that was not relevant to the crime with which the defendant was charged and which was not a subject of the State witness's direct examination was nonetheless relevant and a proper subject of cross-examination to show the witness's bias against the defendant and a motive to lie); *Tomengo*, 864 So. 2d at 530 (holding that matters not relevant to the crime charged or the State witness's direct testimony were nonetheless a proper subject of cross-examination of the witness because the matters showed hostility between the defendant and the witness). Florida courts have recognized that "[a] defendant should be afforded wide latitude in demonstrating bias on the part of a witness." *Peret*, 301 So. 3d at 439 (quoting *Lloyd*, 909 So. 2d at 581 (internal alteration omitted)); *Mitchell*, 862 So. 2d

13

at 912 ("[B]ecause liberty is at risk in a criminal case, a defendant is afforded wide latitude to develop the motive behind a witness' testimony. Courts should even allow inquiries that might at first blush appear to be lacking any basis at all thus far in the trial, so long as counsel states a basis tending ultimately to show such bias." (internal quotations, citations and alterations omitted)); *Purcell*, 735 So. 2d at 581 ("Considerable latitude should be accorded a defendant in attempting to establish bias, including allowing inquiries that might at first blush appear to be lacking any basis at all thus far in the trial, so long as counsel states a basis tending ultimately to show such bias."); *Rivera*, 274 So. 3d at 540 ("For purposes of discrediting a witness, a wide range of cross-examination is permitted as this is the traditional and constitutionally guaranteed method of exposing possible biases, prejudices and ulterior motives of a witness as they may relate to the issue or personalities." (quoting *Henry*, 123 So. 3d at 1170 (quoting *Strickland v. State*, 498 So. 2d 1350, 1352 (Fla. 1st DCA 1986))))). "Any evidence which tends to establish that a witness is appearing for the State for any reason other than merely to tell the truth should not be kept from the jury." *Holt v. State*, 378 So. 2d 106, 108 (Fla. 5th DCA 1980) (citing *Cowheard v. State*, 365 So. 2d 191, 193 (Fla. 3d DCA 1978)); *see also Rivera*, 274 So. 3d at 541.

14

## II. The Trial Court Erred

In this case, the fact that Defendant reported to the police that Marks possessed child pornography just a week before Defendant is alleged to have committed the charged crimes against Marks, which resulted in a police investigation of Marks, was certainly a possible reason for Marks to be biased against Defendant. *See Baucham*, 881 So. 2d at 96-97 (holding that the trial court erred by prohibiting the defendant from cross-examining two police officers regarding the fact that the defendant had previously contacted the police chief to complain about the officers); *Tomengo*, 864 So. 2d at 530 (holding that the trial court erred by prohibiting the defendant from cross-examining the victim regarding previous arguments between the victim and the defendant where the defendant argued that these arguments were relevant to show animosity between the defendant and victim that caused the victim to pursue false criminal charges against the defendant as a way of "getting back" at the defendant). Moreover, since Marks was the State's key witness and his testimony was the primary evidence on which the State relied to prove its case, Defendant's right and need to cross-examine Marks for possible bias was especially clear and important. *See Rivera*, 274 So. 3d at 540-41; *Hannah*, 432 So. 2d at 631; *Tomengo*, 864 So. 2d at 530. Accordingly, the trial court erred by prohibiting Defendant from cross-examining Marks regarding this possible reason for Marks to be biased against Defendant. The trial court's conclusion that this testimony would

15

have been more prejudicial than probative simply cannot be squared with Defendant's rights under the Sixth Amendment.

Lastly, the trial court was wrong to reason that allowing Defendant to cross-examine Marks for bias based on the child pornography report was not necessary because Marks was able to testify to the jury that he was upset with Defendant due to her failing to show up at multiple agreed upon times for Marks to retrieve his motorcycle. A criminal defendant is entitled to cross-examine a State witness regarding the specific facts which might cause the witness to be biased against the defendant. *See Davis*, 415 U.S. at 318. Thus, an examination of the witness regarding the facts surrounding one possible ground for bias is no substitute for the right to cross-examine the witness regarding another, different ground for bias. *See McDuffie*, 341 So. 2d at 840 (holding that the trial court erred in prohibiting a defendant from cross-examining the victim regarding whether the victim had previously "threatened to 'come up with something' to get the defendant put in jail," even though the trial court did allow defendant to cross-examine the victim regarding whether the defendant owed the victim money). This is especially true where the ground for bias that Defendant was prohibited from presenting to the jury was much more serious and a much stronger ground for bias than the ground that was presented to the jury. Reporting someone to the police for allegedly possessing child pornography, resulting in the police seizing the person's property and investigating

16

the person for possession of child pornography, is simply a much more serious matter than failing to meet to exchange a vehicle. For this additional reason, the trial court erred.

### III. Harmless Error Analysis

The improper denial of a defendant's opportunity to cross-examine a State witness for bias is subject to harmless error analysis. *Van Arsdall*, 475 U.S. at 684. The Florida Supreme Court "has explained that the harmless error test places the burden on the State, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." *Penalver v. State*, 926 So. 2d 1118, 1137 (Fla. 2006) (quoting *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986) (internal quotations omitted)).

In this case, while the State argued in its Answer Brief that the trial court did not err in prohibiting Defendant from cross-examining Marks regarding the child pornography report, the State made no attempt to establish that the trial court's error, if one occurred, did not contribute to the verdict. Because the State made no attempt to establish that the trial court's error in prohibiting Defendant from cross-examining Marks regarding the child pornography report did not contribute to the verdict in this case, the State has not met its burden under the harmless error test to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict.

17

## Conclusion

The trial court violated Defendant's right under the Sixth Amendment to cross-examine a State witness for bias when it precluded Defendant from cross-examining Marks about the fact that Defendant previously reported Marks to the police for possession of child pornography. This cross-examination was relevant to show Marks's possible bias against Defendant and his motive to lie. Because we do not find this error to be harmless, we reverse Defendant's judgment and sentence and remand this case for a new trial.

REVERSED and REMANDED.

WHITE and GANNAM, JJ., concur.


Blair Allen, Public Defender, and Rachel Paige Roebuck, Assistant Public Defender, Bartow, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and James Hellickson and Jonathan S. Tannen, Assistant Attorneys General, Tampa, for Appellee.


NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF TIMELY FILED