NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

VANESSA MUSSON,                         )
                                        )
            Appellant,                  )
                                        )
v.                                      )           Case No. 2D14-1438
                                        )
STATE OF FLORIDA,                       )
                                        )
            Appellee.                   )
                                        )
_____)

Opinion filed January 22, 2016.

Appeal from the Circuit Court for Pasco
County; Mary M. Handsel, Judge.

Howard L. Dimmig, II, Public Defender,
and Kevin E. Leisure, Special Assistant
Public Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Cornelius C. Demps,
Assistant Attorney General, Tampa,
for Appellee.

LUCAS, Judge.

        Vanessa Musson was convicted after a jury trial of aggravated battery,

simple battery, kidnapping with intent to inflict bodily harm or terrorize, grand theft of a

motor vehicle, and armed robbery.  On appeal, Ms. Musson raises two grounds for

reversal of her conviction and sentence of life without parole for kidnapping.  Finding

merit in her argument that the trial court improperly excluded a defense witness' testimony, we reverse the judgment of conviction and sentence for kidnapping but affirm in all other respects.

## I.

In the late afternoon of September 14, 2012, Bobbie Jo Curtis and her son, Bryan Curtis, tied seventy-one-year-old Joseph Bruno to a chair inside his house, repeatedly threatened him, beat him severely, took his handgun and van keys, and robbed him of his personal property.[1]  At some point during the commission of these crimes, Ms. Curtis decided to enlist the aid of her friend Ms. Musson.  Depending on one's view of the evidence, Ms. Musson's role upon arriving at Mr. Bruno's house was either (a) limited to assisting the Curtises with packing and disposing of Mr. Bruno's van and, at some point, battering a well-meaning neighbor who came inside the house to investigate what was happening or (b) actively participating in nearly the entire enterprise, including Mr. Bruno's beating, armed robbery, and kidnapping.

At trial neither Mr. Bruno nor the neighbor could positively state whether Ms. Musson had any interaction with Mr. Bruno, nor could they describe her involvement with the robbery.  Ms. Curtis and Ms. Musson did not testify.  Bryan Curtis, who had reached a prior plea agreement with the State, testified as a State witness. Mr. Curtis provided the only trial testimony about the details of the robbery, the aggravated battery of Mr. Bruno, and Ms. Musson's participation in these crimes.  Mr. Curtis claimed that early on in the robbery, after binding Mr. Bruno to the chair, his

---

[1]Ms. Curtis and her son had been staying in a guest room at Mr. Bruno's house for approximately a week before the robbery.

mother left in Mr. Bruno's van to pick up Ms. Musson. According to Mr. Curtis, Ms. Musson arrived at the house while he was still gathering Mr. Bruno's effects and while Mr. Bruno was still conscious. Mr. Curtis testified that Ms. Musson emptied Mr. Bruno's wallet, found a debit card, and demanded that Mr. Bruno tell her his personal identification number. Mr. Curtis recounted that when Mr. Bruno refused, Ms. Musson proceeded to threaten and strike Mr. Bruno repeatedly with a baseball bat. According to Mr. Curtis, Ms. Musson also struggled with the neighbor, striking him on the head with a hammer while the three of them (Ms. Musson, Ms. Curtis, and Mr. Curtis) were loading Mr. Bruno's property into the van.[2] Finally, Mr. Curtis stated that the three of them fled the house together in Mr. Bruno's van.

Ms. Musson recalled a quite different version of events in her video-recorded police interview, which was presented to the jury. Ms. Musson admitted she arrived at Mr. Bruno's house at Ms. Curtis' behest, entered the kitchen, helped load Mr. Bruno's effects into his van, struck a neighbor (because, she claimed, he attacked her), and drove the van away from the house. However, Ms. Musson maintained she never participated in any violence against Mr. Bruno because, according to Ms. Musson, she was never aware that Mr. Bruno was even in the house.

To support her theory of defense and undermine Mr. Curtis' credibility, Ms. Musson sought to introduce the testimony of Twila Baccile. Ms. Baccile had, at some point, while being transported in a police van, engaged in a conversation through a grate with a man she believed to be Mr. Curtis. She claimed that they discussed these

_____

[2]The items allegedly handled by Ms. Musson were later tested and did not contain any trace of Ms. Musson's DNA.

crimes during the ride. Ms. Baccile would have testified Mr. Curtis made statements to her that he was "going to blame it all [on] Vanessa . . . [and] come to court and . . . point fingers at Vanessa." Ms. Baccile would have further testified that Mr. Curtis told her that he had "threatened Vanessa's life," that Ms. Musson was "an easy target," and that he "was going to blame it on Vanessa because she was outside."

The trial court ruled that Ms. Baccile's testimony was inadmissible hearsay as it was offered "for the truth of the matter asserted, because the truth of the matter asserted is he plans to blame it all on her." The court struck Ms. Baccile as a witness, and the jury found Ms. Musson guilty of aggravated battery, simple battery, kidnapping, grand theft of an automobile, and armed robbery. The circuit court entered judgment and sentenced Ms. Musson to fifteen years in prison for the aggravated battery conviction, life without parole for the kidnapping and armed robbery convictions, and to time served for the remaining counts, all to run concurrently. Ms. Musson then timely appealed.[3]

II.

We review the trial court's exclusion of evidence for an abuse of discretion. D.M.L. v. State, 976 So. 2d 670, 673 (Fla. 2d DCA 2008). "We recognize that a trial court has wide discretion in areas concerning the admissibility of evidence, but this discretion is obviously limited by the rules of evidence." Alcantar v. State, 987 So. 2d 822, 825 (Fla. 2d DCA 2008). Moreover, "[i]f there is any possibility of a tendency of evidence to create a reasonable doubt, the rules of evidence are usually

---

[3]For reasons that are not clear to us, on appeal, Ms. Musson only challenges the propriety of her kidnapping conviction.

- 4 -

construed to allow for its admissibility." Vannier v. State, 714 So. 2d 470, 472 (Fla. 4th DCA 1998). A proper application of the rules of evidence warrants reversal here.

While correctly capturing the essence of Ms. Baccile's proffered testimony—which was, indeed, a recitation of Mr. Curtis' alleged out-of-court statements—the trial court failed to apply an important definitional limitation of the hearsay rule. See Lark v. State, 617 So. 2d 782, 788 (Fla. 1st DCA 1993) ("If an out-of-court statement is offered in court to prove the truth of the facts contained in the statement, it is hearsay. If an out-of-court statement is not offered to prove the facts contained in the statement, it is not hearsay." (quoting Charles W. Ehrhardt, Florida Evidence, § 801.2 (1992 ed.))).[4] Mr. Curtis' statements to Ms. Baccile were offered, not as substantive evidence of their truth, but to impeach Mr. Curtis' credibility as a witness. See § 90.608(2), Fla. Stat. (2013) ("Any party . . . may attack the credibility of a witness by . . . . [s]howing that the witness is biased."). That is, Ms. Baccile's testimony would have relayed Mr. Curtis' statements of his intention to exaggerate or fabricate the extent of Ms. Musson's involvement in these crimes. As the Fourth District has observed,

> [u]tterances of a witness indicating motive or bias do not constitute hearsay when offered for impeachment purposes. "Because liberty is at risk in a criminal case, a defendant is

---

[4]The trial court's error may have proceeded in part from a mistaken view that Ms. Musson had not laid the proper predicate to impeach Mr. Curtis through Ms. Baccile's testimony. The court indicated that the defendant would have to first address Mr. Curtis on the matters raised in Ms. Baccile's testimony before she could be called to testify. Although such a procedure is necessary to impeach a witness under the prior inconsistent statement hearsay exception, "[t]his kind of precondition or prior foundation for evidence tending to show bias has long been disapproved." Purcell v. State, 735 So. 2d 579, 580 (Fla. 4th DCA 1999). Rather, "the hostility of a witness towards a party against whom he is called may be proved by any competent evidence . . . [including] the testimony of other witnesses . . . ." Jones v. State, 678 So. 2d 890, 893 (Fla. 4th DCA 1996) (quoting Alford v. State, 36 So. 436, 438 (Fla. 1904)).

> afforded wide latitude to develop the motive behind a witness' testimony." If cross-examination alone is not sufficient to expose a witness' improper motives, a defendant may present other impeachment testimony.

Green v. State, 691 So. 2d 49, 50 (Fla. 4th DCA 1997) (citations omitted) (quoting Livingston v. State, 678 So. 2d 895, 897 (Fla. 4th DCA 1996)); see also Fields v. State, 608 So. 2d 899, 903 (Fla. 1st DCA 1992) ("Likewise, utterances of a witness indicating bias are admissible for impeachment purposes. They do not constitute hearsay when offered for such a purpose.").

The trial in this case appeared to turn on one or two witnesses' recollection of events. Ms. Baccille's testimony about one witness' alleged bias or motive would be of vital relevance. See Webb v. State, 336 So. 2d 416, 418 (Fla. 2d DCA 1976) ("Bias or prejudice of a witness has an important bearing on his credibility, and evidence tending to show such bias is relevant."). Thus, we cannot say that the excluded testimony was harmless; to the contrary, Mr. Curtis' credibility went to the heart of the State's case against Ms. Musson. See State v. DiGuilio, 491 So. 2d 1129, 1135 (Fla. 1986) (stating that harmless error test places the burden on State "to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction"); Alford v. State, 36 So. 436, 438 (Fla. 1904) ("Questions touching interest, motives, animus, or the status of witnesses to the suit, or parties to it are not collateral or immaterial. . . . [A]nd it is not within the discretion of the court to exclude [such evidence].").

III.

Accordingly, we reverse the circuit court's judgment of conviction against Ms. Musson on the charge of kidnapping and remand this case for a new trial on that charge. We affirm the judgment in all other respects.

Affirmed in part, reversed in part, and remanded for a new trial.


SILBERMAN and SLEET, JJ., Concur.