IN THE SECOND DISTRICT COURT OF APPEAL, LAKELAND, FLORIDA

April 6, 2018


VANESSA MUSSON                    )
                                  )
            Petitioner,           )
                                  )
v.                                )       Case No. 2D17-1208
                                  )
STATE OF FLORIDA,                 )
                                  )
            Respondent.           )
_____   )

BY ORDER OF THE COURT:

            Upon consideration of the motion for rehearing and/or clarification filed by

the respondent on January 5, 2018,

            IT IS ORDERED that the respondent's motion for rehearing and/or

clarification is granted.  The opinion dated December 22, 2017, is withdrawn and the

attached opinion is substituted therefor.  No further motions for rehearing will be

considered.



I HEREBY CERTIFY THE FOREGOING IS A
TRUE COPY OF THE ORIGINAL COURT ORDER.



MARY ELIZABETH KUENZEL, CLERK

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


VANESSA MUSSON,                          )
                                         )
              Petitioner,                )
                                         )
v.                                       )         Case No. 2D17-1208
                                         )
STATE OF FLORIDA,                        )
                                         )
              Respondent.                )
_____)

Opinion filed April 6, 2018.

Petition Alleging Ineffective Assistance
of Appellate Counsel.  Pasco County;
Mary M. Handsel, Judge.

Vanessa Musson, pro se.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Cornelius Demps,
Assistant Attorney General, Tampa,
for Respondent.


VILLANTI, Judge.


        In her petition filed under Florida Rule of Appellate Procedure 9.141(d),

Vanessa Musson raises two grounds alleging ineffective assistance of appellate

counsel.  We grant the petition in part and deny it in part.

A jury found Ms. Musson guilty of simple battery,[1] aggravated battery, kidnapping with intent to inflict bodily harm or terrorize, grand theft of a motor vehicle, and armed robbery.  She appealed her judgment and sentences, and this court reversed the kidnapping conviction, describing the facts as follows:

> In the late afternoon of September 14, 2012, Bobbie Jo Curtis and her son, Bryan Curtis, tied seventy-one-year-old Joseph Bruno to a chair inside his house, repeatedly threatened him, beat him severely, took his handgun and van keys, and robbed him of his personal property.  At some point during the commission of these crimes, Ms. Curtis decided to enlist the aid of her friend Ms. Musson.  Depending on one's view of the evidence, Ms. Musson's role upon arriving at Mr. Bruno's house was either (a) limited to assisting the Curtises with packing and disposing of Mr. Bruno's van and, at some point, battering [the victim's] well-meaning neighbor who came inside the house to investigate what was happening or (b) actively participating in nearly the entire enterprise, including Mr. Bruno's beating, armed robbery, and kidnapping.
>
> At trial neither Mr. Bruno nor the neighbor could positively state whether Ms. Musson had any interaction with Mr. Bruno, nor could they describe her involvement with the robbery.  Ms. Curtis and Ms. Musson did not testify.  Bryan Curtis, who had reached a prior plea agreement with the State, testified as a State witness.  Mr. Curtis provided the only trial testimony about the details of the robbery, the aggravated battery of Mr. Bruno, and Ms. Musson's participation in these crimes.  Mr. Curtis claimed that early on in the robbery, after binding Mr. Bruno to the chair, his mother left in Mr. Bruno's van to pick up Ms. Musson.  According to Mr. Curtis, Ms. Musson arrived at the house while he was still gathering Mr. Bruno's effects and while Mr. Bruno was still conscious.  Mr. Curtis testified that Ms. Musson emptied Mr. Bruno's wallet, found a debit card, and demanded that Mr. Bruno tell her his personal identification number.  Mr. Curtis recounted that when Mr. Bruno refused, Ms. Musson proceeded to threaten and strike Mr. Bruno repeatedly with a baseball bat.  According to Mr. Curtis, Ms.

---

[1]The State charged Ms. Musson with aggravated battery in this count, but the jury found her guilty of the lesser-included offense of battery.

- 2 -

Musson also struggled with the neighbor, striking him on the head with a hammer while the three of them (Ms. Musson, Ms. Curtis, and Mr. Curtis) were loading Mr. Bruno's property into the van. Finally, Mr. Curtis stated that the three of them fled the house together in Mr. Bruno's van.

Ms. Musson recalled a quite different version of events in her video-recorded police interview, which was presented to the jury. Ms. Musson admitted she arrived at Mr. Bruno's house at Ms. Curtis' behest, entered the kitchen, helped load Mr. Bruno's effects into his van, struck a neighbor (because, she claimed, he attacked her), and drove the van away from the house. However, Ms. Musson maintained she never participated in any violence against Mr. Bruno because, according to Ms. Musson, she was never aware that Mr. Bruno was even in the house.

To support her theory of defense and undermine Mr. Curtis' credibility, Ms. Musson sought to introduce the testimony of Twila Baccile. Ms. Baccile had, at some point, while being transported in a police van, engaged in a conversation through a grate with a man she believed to be Mr. Curtis. She claimed that they discussed these crimes during the ride. Ms. Baccile would have testified Mr. Curtis made statements to her that he was "going to blame it all [on] Vanessa . . . [and] come to court and . . . point fingers at Vanessa." Ms. Baccile would have further testified that Mr. Curtis told her that he had "threatened Vanessa's life," that Ms. Musson was "an easy target," and that he "was going to blame it on Vanessa because she was outside."

The trial court ruled that Ms. Baccile's testimony was inadmissible hearsay as it was offered "for the truth of the matter asserted, because the truth of the matter asserted is he plans to blame it all on her."

Musson v. State, 184 So. 3d 575, 577-78 (Fla. 2d DCA 2016) (alterations in original) (footnotes omitted). We held that the trial court abused its discretion by ruling that Ms. Baccile's testimony was inadmissible hearsay because Mr. Curtis' statements to Ms. Baccile were offered to impeach his credibility as a witness and not as substantive evidence. Id. at 578. Because "[t]he trial in this case appeared to turn on one or two

- 3 -

witnesses' recollection of events," this court held that "Ms. Baccille's [sic] testimony about one witness' alleged bias or motive would be of vital relevance," so the State could not establish that the error was harmless.  Id. at 579.  In footnote three, this court wrote, "For reasons that are not clear to us, on appeal, Ms. Musson only challenges the propriety of her kidnapping conviction."  Id. at 578 n.3.  Accordingly, this court reversed only Ms. Musson's kidnapping conviction.

Ms. Musson then filed a petition alleging ineffective assistance of appellate counsel, asserting in ground one that her appellate counsel was ineffective for failing to argue that the trial court's abuse of discretion in excluding Ms. Baccile's testimony was harmful error as to all of her convictions.  She asserted in ground two that her appellate counsel was ineffective for not filing a motion for rehearing or clarification to point out to this court that she argued in her amended initial brief that the error required reversal of her "convictions."  She further asserted that if her appellate counsel had filed such a motion, this court would have "taken a closer look at their decision and seen that their decision should have encapsulated each one of the charges against Ms. Musson and not just the kidnapping charge."

Analysis

To establish a claim of ineffective assistance of appellate counsel, a petitioner must show that her appellate counsel performed deficiently and that "the deficiency of that performance compromised the appellate process to such a degree as to undermine confidence in the fairness and correctness of the appellate result."  Downs v. Moore, 801 So. 2d 906, 909-10 (Fla. 2001) (quoting Wilson v. Wainwright, 474 So. 2d 1162, 1163 (Fla. 1985)).  "[A] court deciding an actual ineffectiveness claim must judge

the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland v. Washington, 466 U.S. 668, 690 (1984). In making this decision, this court must determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. Under this test, we agree with Ms. Musson that her appellate counsel unreasonably failed to argue that the trial court's error in excluding the impeachment testimony was also harmful as to the simple battery conviction and that this omission was deficient performance that undermines confidence in the outcome of the appeal.

Deficient Performance

This court's records reflect that Ms. Musson's appellate counsel filed her initial brief on January 30, 2015. That brief challenged only the sufficiency of the evidence for the kidnapping conviction. The first paragraph of the statement of the case and facts states the following:

> This is an appeal from a conviction of simple battery on Joseph Bruno, aggravated battery of David Ragon, grand theft motor vehicle, kidnapping and robbery. ***Although Ms. Musson continues to assert that she was not involved in the battery of Mr. Bruno, this appeal is regarding the conviction of the kidnapping.*** Specifically, the State failed to prove by competent substantial evidence that Ms. Musson was involved in the kidnapping of Mr. Bruno. Ms. Musson was sentenced to life without parole on the conviction of the charge of kidnapping.

(Emphasis added.)

Later that day, Ms. Musson's appellate counsel filed an amended initial brief that added as issue one the trial court's error in excluding the impeachment testimony. Appellate counsel offered no argument regarding how the error affected the

individual verdicts, instead simply asserting: "The error and abuse of discretion by the trial court allowed the testimony of the State's witness to go unchallenged and could have changed the jury's verdict in this matter. Accordingly, the convictions of Ms. Musson must be reversed and the matter remanded for a new trial." Notably, appellate counsel refers to a single verdict but plural convictions. Ms. Musson's appellate counsel did not alter or delete the first paragraph in the statement of the case and facts. And even after this court issued its opinion pointing out in footnote three that "[f]or reasons that are not clear to us, on appeal, Ms. Musson only challenges the propriety of her kidnapping conviction," Ms. Musson's appellate counsel still did not file a motion for rehearing to explain why he referred to Ms. Musson's "convictions" in issue one and asserted that she was not involved in the simple battery but still only challenged her kidnapping conviction. Musson, 184 So. 3d at 578 n.3. Accordingly, cumulatively, counsel's omissions in advocating this issue were unreasonable under the "prevailing professional norms" and constitute deficient performance. Strickland, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."). If Ms. Musson's appellate counsel had intended to challenge Ms. Musson's other convictions, the prevailing professional norms would have required him to expressly do so; alternatively, if appellate counsel intended to challenge only the kidnapping conviction, this decision was unreasonable.

Prejudice

The direct appeal record reflects that Ms. Musson's recorded interview with the police was played for the jury. She admitted that Ms. Curtis called her and asked for her help emptying a safe. Ms. Curtis told her that the homeowner was not

there. Ms. Musson stated that the Curtises had piled things by the door and that she moved them into the van. She consistently stated that she did not see the victim of the kidnapping and simple battery. However, she admitted to stealing the victim's firearms and his van, and she admitted that when the victim's neighbor approached her as she was putting the victim's property into his van, she hit the neighbor with a firearm.

Thus, Ms. Musson admitted to aggravated battery of the neighbor and grand theft of a motor vehicle. She also admitted to facts that constitute armed robbery. Section 812.13, Florida Statutes (2012), states:

> (1) "Robbery" means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.
>
> (2)(a) If in the course of committing the robbery the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084.
>
> . . . .
>
> (3)(a) An act shall be deemed "in the course of committing the robbery" if it occurs in an attempt to commit robbery or in flight after the attempt or commission.
>
> (b) An act shall be deemed "in the course of the taking" if it occurs either prior to, contemporaneous with, or subsequent to the taking of the property and if it and the act of taking constitute a continuous series of acts or events.

In Thomas v. State, 36 So. 3d 853, 856 (Fla. 3d DCA 2010), the Third District held that the "force, violence, assault, or putting in fear" need not "be exerted against the person from whom the property was taken, so long as it was exerted in the

- 7 -

course of the taking." See also Santilli v. State, 570 So. 2d 400, 402 (Fla. 5th DCA 1990) ("[T]he continuity of [the appellant's] progression from the store to his forceful act against the [pursuing] officer with his car outside the store justified submission of the robbery offense to the jury."); Rumph v. State, 544 So. 2d 1150, 1151-52 (Fla. 5th DCA 1989) ("Appellant's use of force to shove [a store employee] out of his way and into the door as he fled with [stolen property] constitutes the use of force in flight after the taking and provides the evidence to sustain appellant's conviction for robbery.").

Accordingly, the evidence of Ms. Musson's guilt of armed robbery, grand theft of a motor vehicle, and aggravated battery of the neighbor did not hinge on Mr. Curtis' credibility. Had Ms. Musson's appellate counsel specifically challenged the trial court's ruling in excluding the impeachment evidence as to each of these convictions, the State would have been able to establish that the error was harmless. See State v. DiGuilio, 491 So. 2d 1129, 1135 (Fla. 1986).

But Ms. Musson did not admit to facts that constitute the elements of simple battery of the victim. As with the kidnapping charge, the evidence of Ms. Musson's guilt hinged on Mr. Curtis' testimony. Because this court held that Mr. Curtis' credibility was critical as to the kidnapping charge, if Ms. Musson's appellate counsel had also specifically challenged the simple battery conviction, this court would have necessarily also reversed the circuit court's judgment of conviction for simple battery. Thus, confidence in the outcome of the appeal is undermined.

Based on the foregoing, we must grant Ms. Musson's petition in part and deny it in part. We grant the petition only as to the simple battery conviction; because a new appeal would be redundant, we reverse Ms. Musson's conviction for simple battery

and remand for a new trial on that charge.  See Johnson v. Wainwright, 498 So. 2d 938, 939 (Fla. 1986).  We deny the petition as to the aggravated battery, grand theft of a motor vehicle, and armed robbery convictions.

Petition granted in part and denied in part.

KHOUZAM and BADALAMENTI, JJ., Concur.